FRANK O. ELMGREN v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

July 19, 1907.

Nos. 15,167—(71).

**Master and Servant—Disobedience of Rules.**
> Where the duties of a servant in given circumstances are particularly specified in the unambiguous and reasonable rules of the master, of which the servant has knowledge, and to which he has assented, and with which he is familiar, his nonobservance or disobedience of them at a time when they are capable of observance is negligence as a matter of law, and is not to be judged by the undefined and varying requirements of ordinary care.

[1] Reported in 112 N. W. 1067.

**Contributory Negligence.**

> One cannot recover damages for an injury to the commission of which he has directly contributed; and it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been a proximate cause of the injury, he is without remedy against another also in the wrong.

**Evidence.**

> An interlocking plant, protecting the crossing of defendant's track by another road, had been set so as to indicate by means of a white light that the tracks of the latter road were clear, and so as to indicate by means of a red light that there was danger on defendant's track, because of which trains on it should stop. At a distance of three thousand feet, the distance signal showed a green light, indicating that caution should be exercised, and that the train should slacken speed. Plaintiff, a fireman on defendant's train, approaching the crossing, observed the green light, and that the engineer reduced the speed of the train from thirty to twenty miles an hour. At that rate it continued until the engineer made an emergency stop by means of the air brakes just before the train was derailed. The rules, with which the fireman was familiar, required him to call the engineer's attention to a signal set against the train when the engineer had apparently failed to observe it. It is *held* that the act of the fireman in doing nothing, although the train continued at a speed of twenty miles an hour after the green signal had been seen, and while the red signal was exposed, constituted contributory negligence, and prevented his recovery of damages caused by the derailment.

Action in the district court for Ramsey county to recover $1,950 damages for personal injuries sustained by plaintiff while in the employ of defendant road. The case was tried before Bunn, J., and a jury which returned a verdict of $500 in favor of plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*F. W. Root,* for appellant.

*Humphrey Barton,* for respondent.

JAGGARD, J.

Plaintiff and respondent's freight engine fireman brought this action against the defendant and appellant railway company for damages caused by the derailment of the engine in consequence of the defendant's alleged negligence. The jury returned a verdict in his favor for

$500. Upon the alternative motion by defendant, the trial court refused to direct judgment notwithstanding the verdict, but granted a new trial. Defendant appealed from the refusal to direct a judgment in its favor.

The record discloses substantially the following facts: The westbound freight train, by the derailment of which the plaintiff was injured, was approaching a station called Newport on defendant's main line. Before it passed Pullman avenue, the interlocking plant protecting the crossing of defendant's double-track system by the Rock Island road had been set for a Rock Island train. This device operated the switches, derails, and signals from a tower located on the north side of all the tracks. The night was dark, and it was raining a little at the time; but the signals were plain, and could be seen without difficulty. As a result the signals showed a white light on the Rock Island track and a red light on the defendant's track. This indicated that the Rock Island track was clear, and that there was danger on the defendant's track, because of which trains moving on it should stop. This red signal appeared at a point about thirty feet north from the center of the west-bound track, and nine hundred fifty five feet east of the tower at the crossing. It is called the "home signal." On the same side, and three thousand feet further east and south, was located the distance signal for that track. That signal was arranged so as to show either a white or a green light. A white light indicated a clear track, and meant: "Go ahead." A green light indicated "caution," and was notice to the engineer and fireman of the train which was afterwards wrecked that the "derail" and "home signal" were set against them, and that they should proceed with their train under complete control, so that it might be stopped before reaching the home signal, at which it would, unless stopped, be derailed. The testimony also showed that the absence of any signal, or the presence of conditions preventing it being seen at a place where the signal is usually shown, also indicated danger, and meant: "Stop and ascertain whether it is safe to proceed." The plaintiff saw that the distance signal was green as the train approached it. The engineer "eased up his engine, closed the throttle partly, and eased it up on the steam." Plaintiff then put in two scoops of coal, stepped out

in the gangway, and looked for the "home signal," when the train was "about past the distance signals * * * between the half-ways and the distance signals." He was looking for the home signal, and says that he saw that it was the white, indicating that the track was clear. He then went back to work, and put in some more coal. During that period he did not observe the engineer doing anything. The engineer then set the emergency brakes, and called out his last word, "Frank." The engineer was killed and did not testify.

The determining question in this case, it follows, is whether or not the defendant was as a matter of law guilty of contributory negligence in failing to obey his instructions, in not seeing the red light, and in doing nothing to prevent the engineer from running his train into an open switch.

The engineer and fireman were instructed to be on the lookout for signals constantly. The record permits no controversy as to the requirement by the time-card rules that the conductor, on being handed a telegraphic train order, must give the engineer one copy, must read the other, and that the two must compare them, to see if they understand the orders alike. It is a part of the time-card rules, also, that, the engineer shall hand his copy of the order to the fireman, so that he, too, will understand it; and it is made the duty of the fireman to be on the lookout for signals, just as well as it is of the engineer, when approaching a signal station, and "if a fireman notices a signal is set against him, and notwithstanding that the engineer is going right along with his train, it is the duty of the fireman to call the engineer's attention to it." "It is the duty of the fireman to be on the alert, just the same as the engineer. He is so instructed, and in the examination which every man entering the service receives they are so instructed." It is true that the fireman was subordinate to the engineer, and usually performed his duties under the direction of the engineer, and had neither equal power nor equal responsibility with the engineer. None the less it was the duty of both employes to work together for the protection of the train. The intention of the rules was to provide the engineer with two sets of eyes, instead of one, so that, in case of failure to use the one pair, the other pair might nevertheless apprise him of danger and thus avoid harm. The announced purpose of the rules was to secure the "combined understanding of

every man in the train to guard against accident." Plaintiff understood these rules and agreed to obey them. To enable him so to do, his eyes had been examined—"he had had some physical examination, and mental examination as well"—when he entered the service. No question arises as to his personal ability to obey them.

The abstract duty is clear. The enforcement of that duty by the instruction of employes in the rules is equally clear. It is of the utmost importance as a matter of public policy that the strict observance of these rules should be insisted upon by railroad companies, and, whenever opportunity occurs, also by the courts. The appalling fatalities to human life, and the great destruction of property, consequent upon mismanagement and neglect of signal devices, is in large measure avoidable. However much sympathy may be naturally felt for overworked employes, a rule of law which would ignore in any degree the safety of the public would be little less than calamitous. If a clear case of violation of the solemn duty on the part of an employe to regard signals be shown, he must be held to be in no position, in the absence of a satisfactory explanation, to recover damages in a measure occasioned by his own fault.

It is well settled that a failure to perform a duty not to injure another constitutes negligence and renders the party liable for injuries resulting from it. The violation of a duty imposed by statute constitutes conclusive evidence of negligence, or, in other words, negligence per se. Mitchell, J., in Osborne v. McMasters, 40 Minn. 103, 105, 41 N. W. 543, 12 Am. St. 698. And see Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279. In the absence of explanation, or the showing of another cause or modifying circumstance, it will ordinarily be presumed that violation of such law or ordinance was the cause of the accident. In no other way can effect be given to the evidence of negligence, which all courts declare such violation to be. By parity of reasoning, an employe who fails to observe the rules of a railway company prescribed for the government of a train in accordance with signals, which are designed for the protection of the public and employes both, must ordinarily, and in the absence of exculpatory facts, be presumed to have been guilty of contributory negligence. It does not follow that no explanation can be made by the employe. It is possible that he might be able to show that his neg-

ligence did not contribute as a cause to the accident. The burden is on him, if he asserts this, to show it. There is a natural and logical presumption in this case that, if the plaintiff had sufficiently and specifically called the engineer's attention to his violation of the requirement of the rules that he should slow down to a speed of six miles an hour upon passing the distance signal showing green, the engineer would have stopped the train, and the accident would have been avoided.

Plaintiff insists: "It is conceded that the engineer was, at the time in question, acting in a negligent manner; hence the presumption (which has just been stated) that ordinarily would prevail cannot be indulged in." This is a complete non sequitur. The plaintiff urges upon us also that this trip involved fourteen hours' continuous service; that up to the time of the accident plaintiff had been at work without interruption for twelve hours. However oppressive railroad work may be, and however much occasion there may be in particular instances for deploring the exposure of property or passengers to danger because of service which may involve the exhaustion of human powers, we are at a loss to see what logical bearing the facts for which plaintiff contends have upon the legal questions here involved.

Plaintiff further insists that he saw a white light, and was thus lulled into security. Careful examination of the evidence has satisfied us that it was physically impossible for the white light to have shown in the semaphore of the track on which plaintiff's train was running at the time plaintiff said he saw it. On argument in this court, both counsel conceded that the nature of the interlocking device was such that, if that system was set so as to show white on the Rock Island track, it must have shown red on the defendant's track. It cannot be reasonably contended that this interlocking device was set wrong; that is, so as to show by mistake a white light on defendant's tracks and a red light on the Rock Island tracks. The negligence complained of, and which is fully supported by the evidence, was the act of the engineer in not being governed by the red light which actually appeared. It was equally the duty of the fireman to have observed the red light and to be governed accordingly. If it was negligence on the engineer's part, it was negligence on the fireman's part, also, not to so observe and act.

Nor is plaintiff exonerated by his further contention that the two semaphores, to wit, the one on the defendant's track, and the other on the Rock Island track, were placed too near together, and that for this reason he may have mistaken the white light on the Rock Island track for the light on defendant's track. Such negligence on defendant's part was not pleaded, nor tried, nor is it sustained by the evidence. Plaintiff was familiar with the cross-over, and knew that it was a place of danger. He had previously observed the green light signal on the track on which he was running, and was apprised as to the peril ahead. The known danger required the exercise of extreme caution. If he had seen the white light, why should he not also have seen the red light? If it was difficult to determine which was the signal at the cross-over, the red or the white, ordinary care required that the train should be slowed up and brought under control, until it had reached a point where the lights could be distinguished with certainty. Plaintiff says, however, that the signals "showed up quite plain." It is, however, difficult, if not impossible, to understand, and counsel has not made it clear, how a fireman, familiar with the locus in quo, put on the lookout for danger signals, could have mistaken a white signal south of the track for a red signal north of the track, clearly visible along a straight track for a great distance.

Finally, plaintiff relies upon the circumstance that he saw the engineer reduce the speed of his train. This, however, was done at a point some three thousand feet from the place of accident. According to plaintiff's own testimony, the train had been running at thirty miles an hour. The partial closing of the throttle checked its speed to twenty miles an hour. At that rate it ran up to the time of the accident, although, as plaintiff himself testified, there was a general rule requiring that "freight trains will not exceed ten miles an hour passing stations." This train was near the station of Newport. There was uncontradicted testimony that after the train had passed the caution signal—the green light—"the speed must be reduced, and brought down to a speed where the train can be stopped. Under such circumstances the train should have been reduced to six miles an hour —crawling along, and waiting, if you please, for the signal to be given him before he could proceed." Was the fireman guilty of contribu-

tory negligence as a matter of law in saying nothing to the engineer concerning the speed of the train, and in doing nothing, despite the fact that a caution signal had been set and seen, and that the running at twenty miles an hour continued up to the time the brakes were set? His explanation is: "I didn't think. I didn't pay no notice to the speed after we were inside the distance signal." It is no part of the function of this court to determine at what point in the movement of that train that night the plaintiff should have called the engineer's attention to the red light or to the excessive speed of the train. The logic of the situation required the fireman to do something more than rest secure because the engineer had previously lessened the speed of the train. If the engineer was asleep, he should have awakened him. If awake and inadvertent, he should have called the danger to his attention. He should have done this long before the time at which the engineer set the emergency brakes.

The conclusion which has been reached on principle is confirmed by authority. In St. Louis & S. F. R. Co. v. Dewees (C. C. A.) 153 Fed. 56, it was held, per Van Devanter, J., that: "Where the duties of a servant in given circumstances are particularly specified in the unambiguous and reasonable rules of the master, of which the servant has knowledge and to which he has assented by entering and continuing in the service, his nonobservance or disobedience of them at a time when they are capable of observance is negligence as matter of law, and is not to be judged by the undefined and varying requirements of ordinary care. Rules of a railroad company requiring the engineer to keep a careful lookout for signals, to stop the train when a signal is not understood, or is imperfectly displayed or absent from its usual place, and expressly requiring that he 'must know,' when approaching a switch, that it is in proper position, are reasonable and valid. And where the engineer, in approaching a known switch, at which designated and known signals were customarily displayed to indicate whether the switch was closed or open * * * took chances upon being able to go safely through the same at great and unwarranted speed, or knowing that he was approaching the switch, and not knowing whether it was closed or open, took chances on its being in proper position, and so drove into the switch when it was open, whereby the train was wrecked and he was killed, held he was guilty of contribu-

tory negligence, preventing a recovery for his death. One cannot—nor can one standing in his stead—recover damages for an injury to the commission of which he has directly contributed; and it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been a proximate cause of the injury, he—as also one standing in his stead—is without remedy against another, also in the wrong."

The entire reasoning of that case controls this case. It refers to St. Louis & S. F. R. Co. v. Bishard (C. C. A.) 147 Fed. 496. There the representatives of a fireman, killed by the wrecking of a passenger train moving at speed of fifty five miles an hour, were permitted to recover. Not only, however, were the rules in that case different, but whether the red lamp was lighted was in dispute. The flagman sent back to warn the approaching train negligently failed to perform his duty. There was no evidence to show whether deceased did or did not perform his duty of keeping a lookout for signals. It did not appear that other duties of moment may not have demanded the attention of the fireman elsewhere than to signals. There were no devices corresponding to the semaphores in this case. The train was running under special orders, requiring it to maintain a speed of fifty five miles an hour. The passing track was clearly insufficient. No distance signal had been given, as was given in the case at bar by a green light. In brief, the facts in that case were essentially different from the facts in this case. Even if the flagman had performed his duty at a great distance from the point of accident to the knowledge of the fireman, and both the fireman and engineer had then been negligent, the cases would have been essentially different.

The order of the district court is accordingly reversed, with instructions to enter judgment for the defendant notwithstanding the verdict.