MAURICE DWYER v. NORTHERN PACIFIC RAILWAY COMPANY and Others.[1]

December 24, 1908.

Nos. 15,890—(147).

**Railway Rule—Switch Engine.**

The rules of appellant railway company provided: "All trains must approach terminals, the ends of double tracks, junctions, railroad crossings at grade, and drawbridges prepared to stop, and must not proceed until switches or signals are seen to be right or the tracks seen to be clear." *Held*, this rule does not by its terms require an engineer, in charge of a switch engine upon a cross-over track, to stop his engine in the clear of a main track until the switch light has been turned. He may rely upon other signals and upon his observation. Respondent was not conclusively guilty of contributory negligence in obeying the lantern signal of the head switchman to advance toward the switch on the main outgoing track without waiting for the switch light to be turned.

Action in the district court for St. Louis county against Northern Pacific Railway Company, George W. Nesbitt, Henry W. Verboncoeur, G. Edward Harper and Edward M. Guyer, to recover $50,000 for personal injuries. Nesbitt was engineer and Harper was foreman of the switch crew running the engine and freight car which collided with plaintiff's engine. The case was tried before Ensign, J., who

[1] Reported in 118 N. W. 1020.

directed a verdict in favor of defendant Verboncoeur. The jury rendered a verdict in favor of defendant Guyer and a verdict in favor of plaintiff against the other defendants for $9,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant company and defendants Nesbitt and Harper appealed. Affirmed.

*C. W. Bunn* and *Washburn, Bailey & Mitchell,* for appellants.

*Samuel A. Anderson,* for respondent.

LEWIS, J.

Appellant railway company owned and operated two certain railway tracks into and out of the city of Duluth, running parallel and about eight feet apart, known as the incoming and outgoing main tracks. The switchyard of the company is located on the southerly side of the tracks, at Twentieth Avenue West, and a cross-over track connects the yard with the main tracks. Respondent was a locomotive engineer, and at the time of the accident was in charge of a switch engine. His crew consisted of himself, the switch foreman, Banack, the head switchman, Guyer, and the following switchman, Robertson. On the fifteenth of December, 1906, at about 6:30 p. m., when about to cross the main tracks with his engine, respondent stopped in the clear of the incoming track for the purpose of having the switches lined up. The switch foreman boarded the engine at that point and took a position at the left-hand side of the cab. Robertson threw the switches on the incoming main track and Guyer went on towards the switch on the outgoing main track, and as he went along, but before he had reached the switch, he gave the lantern signal to the engineer to proceed, and at the same time the foreman told him to go ahead. He thereupon proceeded slowly, keeping a lookout, and had crossed the incoming track and was moving his engine onto the outgoing main track, when the light from the yard depot at Twentieth avenue shone on the end of the box car of an outgoing freight, whereupon he immediately reversed his engine and did what he could to prevent a collision, but it was too late, and the car struck his engine. Such was the testimony of respondent.

The distance from the point where the engineer received the switchman's lantern signal to advance to the point of the accident was be-

tween two hundred and three hundred feet. Each switch stand had a lantern with two faces, one red and the other green. When the switches were lined up for the main tracks the green light showed along the main lines and the red light along the cross-over track, and when the switches were thrown connecting the switch track with the main lines the red light showed along the main lines and the green light along the switch track. There is no controversy about the switches on the incoming track. They had been properly thrown and indicated that track to be clear to the switch engine. It is admitted that Guyer had not reached the switch on the outgoing track, and that the light shone green along that track and red to the switch track when he gave the lantern signal.

Respondent recovered a verdict upon the ground that appellant was guilty of negligence in operating the freight train without displaying the usual signal lights at the end of the first car. The evidence was sufficient to sustain the charge in this respect, and the principal question for determination here is whether, under the rules and practice of the company, respondent was guilty of contributory negligence in permitting his engine to foul the outgoing main track before the switch had been thrown to show the green light to him and the red light to the main track.

Appellant argues that it conclusively appears that respondent was guilty of negligence, for the reason that he ignored two important rules of the company:

1. "It must be understood that no notice will be given of the contemplated running of trains. Be prepared for them at any hour of the day or night."

2. "All trains must approach terminals, the ends of double tracks, junctions, railroad crossings at grade, and drawbridges prepared to stop, and must not proceed until switches or signals are seen to be right or the tracks seen to be clear."

With reference to the facts and the rules, what was the duty of the engineer? Was respondent required to wait in the clear of the outgoing main track until the switch had been turned showing him the green light, notwithstanding the switchman's signal to proceed, and notwithstanding he himself was on the lookout, but saw no signs of an approaching train? The rule relied upon, fairly considered, did

not absolutely require the engineer to wait until the switch had been turned. It reads: " * * * Prepared to stop, and must not proceed until switches or signals are seen to be right or the tracks seen to be clear." The language of this rule does not convey the intention that engineers should be held to strictly rely upon the turning of the switch light alone. It fairly means that the engineer must be satisfied, either by the switch light or the signals, and by his own observation, that it is safe to go ahead.

The evidence does not conclusively support appellant's contention that it was the uniform custom to interpret this rule to mean that, where there was a switch light which could be seen, it was the duty of the engineer, not only to look out for other signals and to keep a personal observation of the track, but also to wait until the switch light was properly thrown before advancing. Some of the witnesses testified in a general way that no engineer should foul a track at a junction until he saw the switch light properly turned; but on cross-examination it was generally admitted that the engineer was required to personally observe the track, and was permitted to depend upon the general result of his observations. The evidence warrants the statement that, under circumstances such as developed here, respondent was in the performance of his duties if he kept a lookout for approaching trains on the track, sent the switchman forward, and obeyed his signal, even though the switchman had not yet turned the switch. We find nothing unreasonable in this view of the case. The switchman had gone to the outgoing track for the purpose of turning that switch. Before turning it, he was required to see if the main track was clear. The turning of the switch depended upon his observation. There might be a point of danger between the time the switchman gave the lantern signal and the time he turned the switch light. That would depend upon distance and the time. The rules do not forbid switchmen from anticipating the switch light signal by swinging the lantern after the track had been examined, and simply because the switchman gave the signal before he had turned the switch does not, in itself, prove that respondent was guilty of contributory negligence in accepting the signal as safe in connection with his own inspection of the tracks.

We do not wish to be understood as intimating that railway employees should not be required to adhere strictly to the rules when they are explicit, and there is no intention to retract from the position taken in that regard in Elmgren v. Chicago, M. & St. P. Ry. Co., 102 Minn. 41, 112 N. W. 1067, 12 L. R. A. (N. S.) 754.

Affirmed.