KAREN HONDL, BY R. E. HABERMAN, GUARDIAN
AD LITEM, AND OTHERS v. CHICAGO GREAT
WESTERN RAILWAY COMPANY.

82 N. W. (2d) 245.

March 29, 1957—Nos. 36,934, 36,935, 36,943.

[redacted]

*Grannis & Grannis* and *Luther Stalland,* for appellant.

*Nelson, Casey & Tripp,* for respondents.

Murphy, Justice.

This action arose from a collision between an automobile driven by George Hondl and a freight train owned and operated by the defendant railroad. The accident occurred at approximately 4:30 p. m. on September 9,1954, at the point where U. S. Highway No. 65 crosses the defendant's railroad tracks about seven miles north of Faribault.

There were three passengers in the car besides Mr. Hondl. His wife, Louise, was in the front seat with Marlen, a 4-year-old son,

sleeping on her lap, and Karen, a 12-year-old daughter, was in the back seat.

As highway No. 65 approaches the railroad crossing from the north it is straight and level for approximately one-half mile. September 9, 1954, was a misty day, the sky was overcast, but at the time of the accident it was not dark enough to have the headlights on automobiles. Mr. Hondl was proceeding south at about 50 to 55 m. p. h. The train was proceeding east at about 18 m. p. h. Mr. Hondl apparently looked both ways as he passed the railroad crossing sign, which is about 400 feet from the crossing, but he failed to see the train until he reached the cross-buck railway sign, about 25 feet from the north rail of the tracks. He then applied his brakes and turned the car slightly to the left. The right front of the automobile collided with the left front of the railroad engine. Mrs. Hondl and Marlen were killed, and Karen sustained a cut on one arm besides the ordinary bruises.

R. E. Haberman, acting as trustee for the next of kin of Louise and Marlen Hondl, brought two suits under the Minnesota Wrongful Death Statutes, M. S. A. 573.02, and he also brought suit for the personal injuries suffered by Karen Hondl, acting as her guardian ad litem. The three actions were consolidated for trial. The trial court held that George Hondl was contributorily negligent as a matter of law. The court refused, however, to direct a verdict for the defendant, leaving the question of the defendant's negligence for the jury. The jury returned verdicts of $5,250 for Karen, $13,450 for the wrongful death of Louise, and $2,542 for the wrongful death of Marlen. The defendant moved for judgment notwithstanding the verdict or a new trial in all three cases. The trial court denied the motions in the Karen and the Louise Hondl cases, but it granted a new trial in the Marlen Hondl case unless the plaintiff agreed to reduce the verdict to $251.90. The trial court correctly held that it had erred in submitting the question of general damages in the Marlen Hondl case because the father was the next of kin, and he was not entitled to participate in any verdict for general damages because he was guilty of contributory negligence. The plaintiff con-

sented to the remittitur, and so the defendant's motion was denied. The defendant appealed from the orders in all three cases, and the appeals were consolidated.

■ The defendant contends that the plaintiffs failed to prove that the railroad company was negligent or that the negligence, if any, was the proximate cause of the plaintiffs' damages. The railroad company asserts that there was overwhelming evidence that the defendant's agents in charge of the train sounded the warning devices in a lawfully prescribed manner on approaching the crossing.

There was considerable testimony given concerning the blowing of the whistle and the ringing of the bell by the engineer as the train approached the crossing. M. S. A. 616.34 requires an engineer either to ring the bell or blow the whistle at least 80 rods from the crossing and to continue doing so at intervals until the train has crossed the road. The engineer and fireman both testified that the whistle was blown beginning at the whistle post, which is 80 rods west of the crossing, and that the standard crossing whistle of two short and two long blasts was given until the fireman warned of the approaching Hondl car, at which time the engineer sounded one continuous blast of the whistle. However, Mr. Hondl testified that he was listening for the sound of a whistle or a bell as he approached the crossing but that he heard none. Karen Hondl also testified that she did not hear a whistle, but it does not appear from the record whether she was being particularly attentive at the time or aware of the fact that the car was approaching a railroad crossing. Neither of the two brakemen, who were riding in the caboose, heard any whistle or bell, but there were 23 cars behind the locomotive and there naturally was a great deal of noise from the operations of the train and its equipment, so the fact that they did not hear a whistle is not conclusive. The conductor testified that he heard the standard crossing whistle and then the one long blast. He was also riding in the caboose. Mr. Hoover, a farmer who was a completely disinterested witness, testified that he heard the whistle of the train more than once from his farmhouse, which was about 40 rods from the crossing. However, neither the conductor nor the witness Hoover could state

where the train was in relation to the whistle post at the time they heard the whistle. We think there is a sufficient conflict as to whether the whistle was properly blown so as to make it a question of fact for the jury.

We have held that, where it is contended that proper signals were not given by the railroad company, it is proper to prove the negative fact by the testimony of competent witnesses who were so situated that they might, and probably would, have heard the sound had the bell been rung. In considering the probative value of proof as to the nonexistence of sound by the testimony of witnesses, we have said that "The probative value to be given to the fact that a witness did not hear the sound depends upon the condition of his senses, his proximity to the place, the degree of attention, and other such circumstances which render it more or less probable that, if the sound had been made, the witness would have heard it." Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 368, 109 N. W. 835, 837, 8 L.R.A.(N.S.) 643, 648, 116 A. S. R. 422, 424, 9 Ann. Cas. 935, 936; Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 591, 27 N. W. (2d) 806, 812; Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843; N. P. Ry. Co. v. Haugan (8 Cir.) 184 F. (2d) 472, 476; Roth v. Swanson (8 Cir.) 145 F. (2d) 262, 266.

■ The defendant railroad company further contends that there was no failure on the part of the train crew to maintain a proper lookout and points out that, when the fireman who was on the left or north side of the locomotive first observed the plaintiff's car, it was at least 700 or 800 feet north of the crossing and that, when it got within 500 feet of the crossing and was not slowing down, he directed the engineer to sound the whistle and apply the brakes. They point out that the train crew is not required to reduce the speed of the train until it becomes apparent to them that the automobile driver will not stop and that a collision is therefore imminent. This case should be distinguished from Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 588, 27 N. W. (2d) 806, 810, cited by the defendant, in which case the truck which was demolished in the collision was approaching the crossing slowly "and not in a manner indicative of

an intention not to stop." In the case before us the fireman had an unobstructed view of the approaching automobile being driven by Hondl at a rate of from 50 to 55 m. p. h., and we think that it was proper for the jury to consider whether or not the train crew should not have made some effort to immediately decrease the rate of speed of the train in apprehension of a possible collision. Schroht v. Voll, *supra*.

■ There was a good deal of testimony devoted to the fact that there was much brush and undergrowth on the defendant's right-of-way and that this could have obscured Mr. Hondl's view of the train. This part of the proof, however, was not persuasive, particularly in view of the fact that the pictures which the defendant introduced as exhibits indicate that the undergrowth was not such as might obscure the line of vision from the highway to the train on the tracks. Probably common-law negligence could not have been established by reason of the failure of the defendant to properly maintain its right-of-way, and this aspect of the evidence might not have been important except for the fact that the court gave to the jury an instruction which the defendant contends was prejudicial.

The jury was told that it was the duty of the railroad company to "keep its right of way clear of brush except ties and material for shipment or other material which may be necessary for the maintenance of the operation of the road from March 15th to December 1st." It is apparent that as authority for this instruction the court relied upon M. S. A. 88.21, subd. 4, which provides that a railway company shall be required to keep its right-of-way clear of "grass, brush, combustible materials, logs, poles, lumber, and wood, except ties and material for shipment and other material necessary for the maintenance and operation of the road, from March fifteenth to December first." This section is a part of the Forestry Act which is a comprehensive statutory provision relating in part to the maintenance of equipment and property by a railroad company with a view to preventing fires. The purpose of this particular provision was obviously to lessen the danger of sparks from a train igniting brush which is close to the ties and property of the railroad company during the

season between March 15 and December 1 when the ground is not covered with snow. 32 Minn. L. Rev. 373. Viewing this statute in the light of its subject matter and the objects and purposes the legislature intended to accomplish (17 Dunnell, Dig. [3 ed.] § 8940), we conclude that it was not enacted for the protection of people using the highway and that this instruction could only have added a duty which the railroad did not owe to the plaintiffs. We have held that a violation of a legislative enactment can be evidence of the negligence of a defendant only when the plaintiff is a member of the class for whose protection the statute or ordinance was enacted and then only if the plaintiff's injury "(1) involves an invasion of the particular interest protected by the enactment, (2) was caused by the particular hazard or form of harm against which the enactment was designed to give protection, and (3) if it was proximately caused by the violation." LaBelle v. Swanson, 248 Minn. 35, 41, 78 N. W. (2d) 358, 363; Mechler v. McMahon, 184 Minn. 476, 481, 239 N. W. 605, 608; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450; Westlund v. Iverson, 154 Minn. 52, 191 N. W. 253; Everett v. G. N. Ry. Co. 100 Minn. 309, 111 N. W. 281, 9 L.R.A. (N.S.) 703; Hamilton v. Minneapolis Desk Mfg. Co. 78 Minn. 3, 80 N. W. 693.

The plaintiffs rely on Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553, to demonstrate that the trial court was correct in giving this particular instruction. The Flaherty case may be distinguished by reason of the fact that there the plaintiff collided with the side of a train which was illegally obstructing the street. The purpose of the statute violated in that particular case was to insure the unobstructed use of the streets, and since the plaintiff was using the street he was within the group sought to be protected by the statute. It was because the street was obstructed that the accident occurred. In the case before us the Forestry Act had nothing to do with travelers on the highway, and the violation of it did not in any way precipitate the occurrence of the accident. In view of the testimony with relation to the existence of undergrowth along the right-of-way, the jury could very well have found the defendant negligent solely because of the alleged violation of the Forestry Act.

Since there must be a new trial on all of the issues, a brief discussion of the remaining points will suffice.

■ The trial court properly determined that the father, George Hondl, was negligent as a matter of law and submitted to the jury the question of whether or not the defendant railroad was also negligent. On the question of general damages the jury was instructed "the family involved is the other three children, the remaining surviving three children, *and those alone because the Court has decided that Mr. Hondl cannot benefit by your verdict.* So, based upon the evidence you will take into consideration the financial loss, if any, which you may determine that the three remaining children in the family have sustained by reason of the death of their mother in the one case and the death of Marlen Hondl, the young boy, in the other case." (Italics supplied.)

The railroad company contends that this instruction was erroneous and points out that under Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909, the court held that, where the negligence of one of several beneficiaries contributed to the death, recovery in an action for wrongful death may be denied to the extent that it would inure to the benefit of the one guilty of the contributory negligence and that (226 Minn. 131, 32 N. W. [2d] 308, 3 A. L. R. [2d] 928):

"* * * The proper practice is to require the jury by general verdict to assess the entire damages for loss of the life to all the beneficiaries; to determine by special verdict whether any beneficiary of the recovery was guilty of contributory negligence; and then to deduct from the general verdict the amount of the special verdict if the latter is against the beneficiary."

It is the contention of the defendant that the court erred in submitting the measure of damages to the jury on a basis which was not in accordance with the manner prescribed in the foregoing quotation. We think the instruction was adequate and not prejudicial to the defendant. Under the circumstances here we think that it was properly a question of judicial administration for the trial court, in the exercise of his discretion, to submit the issue as he did, particu-

larly in view of the fact that the court had found that Mr. Hondl was contributorily negligent as a matter of law. Consequently, it was not necessary to instruct the jury to assess the damages to all the beneficiaries and then deduct the portion due the beneficiary who was guilty of contributory negligence.

■ The defendant complains that the court erred with reference to instructions as to special damages. With reference to special damages in the cases of the deceased wife and son, the court said: "That is the out-of-pocket money expenses involved in the treatment of injuries or funeral expenses, hospitalization and so forth." With reference to Karen's claim he said "there you have a right as a matter of special damage to take into account the amount of medical and hospital expenses necessarily incurred in connection with the treatment of her injuries." The court took the position that the special damages were charges against the estates of the deceased wife and son and that recovery for them amounted only to reimbursement to George Hondl, the father, and were therefore not barred by his contributory negligence. It should be noted at this point that all of the special damages have been paid for by the father, George Hondl.

The actions by the representative of the estates of the two decedents, the wife and the son, were brought under M. S. A. 573.02 (action for wrongful death), which statute authorizes the representative of the estate to maintain an action if the decedent might have maintained it, had he lived, for an injury caused by the same wrongful act or omission. The statute provides for a limited recovery and states that it shall be "for the exclusive benefit of the surviving spouse and next of kin, to be distributed to them as is personal property of persons dying intestate"; and it adds this further statement "Funeral expenses and any demand for the support of the decedent, other than old age assistance, allowed by the court having jurisdiction of the action, shall first be deducted and paid." In Schmitt v. Emery, 215 Minn. 288, 292, 9 N. W. (2d) 777, 780, we construed this statute as one "not for the exclusive benefit of the surviving spouse and next of kin, but for the exclusive benefit, first, of those having demands for funeral expenses and for the support

of the decedent as preferred beneficiaries, and, second, for the surviving spouse and next of kin." Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Sykora v. Case Threshing-Mach. Co. 59 Minn. 130, 60 N. W. 1008.

While it is therefore true that special damages may be considered to be a charge against the estate, we do not think that the statute, as applied to the facts before us, was intended to include within the classification of beneficiaries or "those having demands" for expenses, a person whose negligence gave rise to the special damages, and one who by his relationship was in any event primarily responsible for their payment. While there is not complete agreement on the subject (Annotation, 2 A. L. R. [2d] 811), our court has held with the majority view that a person should not be permitted by law to benefit by his own wrong in actions for wrongful death in which the negligence of the parent contributes to the injury and death of his wife or child. Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Jenson v. Glemaker, 195 Minn. 556, 263 N. W. 624; Mattson v. Minnesota & North Wisconsin R. Co. 98 Minn. 296, 108 N. W. 517; Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35. The trial court recognized this well-established principle in instructing the jury that a verdict could not be returned which would include damages to the surviving father and husband, George Hondl.

It is well established that the father and husband has a personal responsibility for the expenses of his wife's and son's burial which results directly not only from his relationship but from the fact that he has contributed to the cause of injuries and death. Gleason v. Warner, 78 Minn. 405, 81 N. W. 206; Elmgren v. Chicago, M. & St. P. Ry. Co. 102 Minn. 41, 49, 112 N. W. 1067, 1070, 12 L.R.A. (N.S.) 754, quoting another case with approval, "One cannot—nor can one standing in his stead—recover damages for an injury to the commission of which he has directly contributed." In Dentinger v. Uleberg, 171 Minn. 81, 213 N. W. 377, we held that a minor could not recover special damages for medical treatment and hospital expenses because

the father was liable for these expenses and he alone had the right to recover for them from the person causing his son's injuries. Had Mr. Hondl brought the suit in his own name he would not be able to recover because his negligence contributed to the injuries of the children. Mattson v. Minnesota & North Wisconsin R. Co. *supra.* In Olson v. Kennedy Trading Co. 199 Minn. 493, 498, 272 N. W. 381, 384, we said: "The husband is under a legal duty to provide his wife with medical care and attention." In Gleason v. Warner, 78 Minn. 405, 406, 81 N. W. 206, we held that where a husband neglects to discharge the duty of burying his dead wife "he is liable to one who provides for her necessary and reasonable burial. * * * This liability is similar to the obligation of the husband to supply his wife with necessaries in life."

Since it appears from the record that the husband was contributorily negligent in causing the death of his wife and son and that he has already paid the special damages involved in this accident so that there is not outstanding any claim on the part of persons furnishing such services, we conclude that the court was in error in instructing the jury that they could consider the question of special damages as to the deceased wife and boy.

Neither should the question of special damages be submitted to the jury in the Karen Hondl case. She was a minor, 12 years of age, living at home with the family. The father was liable for the medical and hospital expenses. Dentinger v. Uleberg, *supra.* He is not entitled to reimbursement from a joint tortfeasor where he paid a bill for which he was primarily responsible not only as the father of the child, but also as one who contributed to the injuries out of which these expenses grew.

With further reference to the Marlen Hondl case, it should be noted that no recovery of general damages may be had because of the fact that the father is the sole beneficiary under the statute. § 525.16 (4) (c). It is also true that special damages should not have been awarded in his case for the reasons heretofore stated. Accordingly, judgment notwithstanding the verdict is ordered in his case.

In view of the fact that there will have to be a new trial on all of the issues in connection with the case of Louise Hondl, the deceased wife, and Karen Hondl, the daughter, the other points raised by the briefs do not require discussion.

The orders in the Karen Hondl and Louise Hondl cases are reversed and remanded for new trial in conformance with this opinion.