NICK BIGO v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.

115 N. W. (2d) 230.

May 11, 1962—No. 38,415.

*N. S. Chanak* and *H. A. Frankson,* for appellant.

*Franklin B. Stevens* and *John F. McGrath,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment entered pursuant to an order of the district court granting the motion of defendant for judgment notwithstanding the verdict.

This case involves an automobile collision with defendant's train. The facts as set out in plaintiff's brief are not materially questioned by the defendant except to enlarge and comment upon certain factual references. Briefly, they are as follows: Plaintiff, a belt repairman employed by the Pacific Isle Mining Company, left his home at Goodland in northern Minnesota at about 5:15 a. m., July 20, 1959,[1] to go to the Wacootah Mine about 49 miles away. He was driving his 1957 automobile. Although the steel strike had been on since July 14, he was called back to work on July 20. Prior to the strike he had participated in a car pool with five or six other employees of the mining company living in Goodland; each employee would drive about once a week.

On the morning of July 20 he drove over the usual route he had traveled with members of the pool. As he drove from his home that morning, plaintiff said that he encountered fog on several county highways and finally on County Highway No. 25, an 8-mile road connecting Highways Nos. 216 and 169. County Highway No. 25 has a blacktop surface with a 24-foot paved portion and runs generally north and south. Plaintiff testified that when he turned north on Highway No. 25 there were places where he could see and other places where the fog "was real thick," and that from Highway No. 216 to the site of the accident there was another place where the fog was "thick so you didn't have too good a vision."

Defendant has two railroad crossings on Highway No. 25 about

---

[1]All references to time involved in this case will be to daylight saving time.

six-tenths of a mile apart, each running in a general east and west direction and each intersecting Highway No. 25 at almost right angles. The crossing involved here was the more northerly one. There were three railroad warning signs for drivers going north as they approached from the south the crossing under consideration. The first was a 30-inch circular sign with two black letters "R R," 6 inches high and 1 inch thick, on a yellow background. This sign was located to the right of Highway No. 25 going north, about 22 feet from the center of the highway and 860 feet south of the center of the railway crossing where the collision occurred.

The second sign was diamond shaped, having 5-foot 11-inch sides with black letters "RAILROAD CROSSING STOP 400 FEET" on a yellow background, located 400 feet south of the crossing involved; it was about 20 feet 8½ inches from the highway center to the closest point of the sign. It was installed by the defendant on January 9, 1959.[2] The third sign was a "crossbuck" sign with the words "RAILROAD CROSSING" painted on a white board with black letters and below it was a steel "STOP" sign, 2 feet across and 2 feet in either direction. The lower edge of the crossbuck was 6 feet 5 inches above the crown of the highway and each arm was 4 feet long. It was located on the south side of the track about 21 feet to the right of the center of Highway No. 25, driving north.

South of the crossing as one travels in a northerly direction, the highway rises. At about 1,100 feet from the crossing it reaches a high point or "peak of a hill," approximately 14 feet above the tracks. The road remains level for 400 feet and then descends to the railroad crossing on an average 2-percent grade. The railroad from the left also descends towards the crossing on a grade of 6 inches for each 100 feet of track. Both the train and plaintiff in his car were going somewhat downgrade at the time they approached the crossing.

In the southwest quadrant area of the crossing intersection were some trees and brush. The eastern edge of the brush was about 100 feet west of the crossing and the westerly edge about 400 feet. There

---

[2]The background of each of the above signs was reflectorized with a type of material that is illuminated when headlamps shine upon them.

was testimony from a civil engineer of the railroad, who prepared some scale maps, that there were certain areas where a driver's vision might be obstructed by the trees.

Plaintiff recalled crossing the first set of defendant's tracks on Highway No. 25. He said there was some fog around that crossing but "you could see plain enough," and the fog did not obscure any of the warning signs at that crossing. He then continued north on Highway No. 25, where he encountered another thick fog bank. He said he was driving between 30 and 35 miles per hour when he was coming up to that bank and that before he got into it he saw no railroad warning signs and that he reduced his speed to about 10 or 15 miles per hour after entering it. He claimed that the fog was so dense that he was just watching the edge of the blacktop, while driving at that speed; that he could see about 25 to 30 feet ahead and that the density of the fog continued from the time he entered that bank until the time of the accident. When asked if he knew that the railroad crossing was in that fog bank, he said that he knew there was another crossing in the vicinity but not "just where it was" as he thought it was a mile or two from the first crossing. (It was six-tenths of a mile.)

He stated on direct examination, when questioned as to how the accident happened:

"I was just going along 10 or 15 miles per hour and all at once from out of that fog a big object appeared, and I slammed on my brakes and I pulled my steering wheel to the right and I figured I was practically to a stop and something hit me and that was all I remember."

Plaintiff said that when he applied his brakes the object with which he collided was about 25 or 30 feet away; that his car was practically at a stop before it was struck; that his visibility was 25 to 30 feet; that in the fog before the collision he saw no railroad warning signs south of that crossing but that he knew there were some and looked for them; that at no time prior to the accident did he hear any train whistle or bells or see any lights, but the sun was out at the time. He said that he had his car window partially open; that his car radio was

not on; and that his car's headlights were on—whether bright or dim, he did not know—but they did not help him see anything.[3]

There was evidence introduced in behalf of plaintiff that the railroad crossing was in a low swampy area and often blanketed with fog until after sunrise. Considerable testimony was presented about fog conditions, particularly at the crossing, during the years 1957, 1958, and prior to the accident in 1959.

Several employees of the mining company who traveled that route to and from their work during those years testified generally to the effect that the fog was thick at times—once or twice a week; that during the times when fog was encountered around the crossing there were occasions when it would obscure and conceal the three railroad warning signs; that some of the witnesses on occasions had gone over the crossing without knowing it due to the heavy fog; and that whenever fog was found on Highway No. 25 it was always at the crossing where this accident happened.

Plaintiff also testified that he had been on this same route from 120 to 150 times during 1957, 1958, and 1959; that his experiences were similar to those of his fellow employees; and that on at least 3 occasions all signs were obscured by fog—twice while others were riding with him and the last time when the collision occurred.

Orin H. Berg, a fellow employee of plaintiff, was called as a witness for the defendant. He said that plaintiff passed him just after he had turned onto Highway No. 25 on the morning of the accident. He first said that he was unable to see any of the signs on the approach to the crossing on account of the fog, but then he said, "I may have seen these signs. I don't know. * * * I don't watch signs every morning." He was asked if he had previously given a signed statement that he did see the signs from the top of the hill as he approached the crossing that morning and that "[t]here was a little fog right down at the crossing, but it was not heavy enough so you couldn't see through." After some explanation by the witness he admitted that he made the statement and that it was possible he saw the signs that morning.

---

[3]Defendant's accident report, put in evidence by plaintiff, described the weather as "Daylight—Foggy."

Another witness for the defendant, Louis Zallar, who arrived at the scene of the accident about 6:30 a. m., said that there was a heavy fog and it "seemed like every morning in that swamp" parallel to the track the fog is heavy and it lifts when the sun rises.

Members of the crew on defendant's train involved in the accident also testified as to the fog condition that morning. The conductor said it was "foggy in spots," on the way from Mitchell, a condition normally encountered in that area in the morning; that he was riding in the caboose at the time of the accident and that when he got out of the caboose he had no difficulty in seeing the crossing 150 to 175 feet away and that he could also see about 100 feet beyond the crossing, or a total of 275 feet, immediately after the accident; that the sun was coming up and that the fog was lifting. The fireman on the train said that there had been intermittent fog as the train came down from Mitchell, "but at the crossing itself, it was perfectly clear." Mrs. Zallar, a witness for the defendant, said it had been foggy that morning but it was "lifting."

Thus it is apparent from the record that there was some fog in the vicinity of the crossing that morning, with conflicts in the testimony as to its density.

Plaintiff claims on appeal that the trial court erred in granting the motion of defendant for judgment notwithstanding the verdict and in finding plaintiff guilty of contributory negligence as a matter of law. His contentions raised other legal questions.

It appears to us that the determinative question is whether plaintiff, under the record here, is guilty of negligence as a matter of law. He argues that he was not. This court has repeatedly held that a motion for judgment notwithstanding the verdict of a jury will be granted only when the evidence is conclusive against the verdict. The motion accepts the view of the evidence most favorable to the verdict and admits every reasonable inference therefrom, as well as the credibility of the testimony for the adverse party. If the verdict has reasonable support in the evidence, it must be accepted as final by both the trial court and by this court on appeal. Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; see, Rules of Civil Procedure, Rule 50.02.

Plaintiff cites as controlling Hondl v. Chicago G. W. Ry. Co. 249 Minn. 306, 82 N. W. (2d) 245; Duluth, W. & Pac. Ry. Co. v. Zuck (8 Cir.) 119 F. (2d) 74; Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813. However, none sustains plaintiff's position on the question of contributory negligence. In the Hondl case, this court held that the *railroad's* negligence was a jury question, but stated that the driver of the automobile involved was contributorily negligent as a matter of law. The Zuck case, though similar on its facts to the instant case, was a suit by a *passenger* in the automobile, and neither she nor the driver of the car had ever been over the highway before; the court held that under the circumstances there contributory negligence was a question for the jury. In the Licha case also plaintiff was a *passenger* in the automobile which collided with defendant's train. The question of contributory negligence of the plaintiff was not an issue.

In granting the motion of defendant for judgment notwithstanding the verdict, the trial court in its memorandum, attached to and made a part of its order, took the position that the verdict of the jury must be set aside as being contrary to the law and the evidence. After some discussion of plaintiff's testimony, the court said:

"* * * The really significant points of his testimony were that he was watching the edge of the road, not looking for the warning signs even though he knew they were there, and that he was traveling at a speed which did not permit him to stop within the distance of visibility when he knew he was approaching a railroad crossing in, as he described it, a dense fog and at any moment a train might loom up as he said this one did."

In Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492, involving the same railroad company as the defendant here, plaintiff obtained a verdict for injuries sustained when his car collided with one of defendant's trains at a highway crossing. Upon an appeal from an order denying the alternative motion of defendant for judgment or a new trial, this court reversed the trial court with direction to enter judgment for the defendant. In that case the plaintiff had never before traveled over the highway crossing involved. To the

driver's right there was, as characterized by defendant, "a parade of signs warning of danger." The collision occurred shortly after 9 o'clock in the evening. The question there was whether contributory negligence appeared as a matter of law. This court said (213 Minn. 111, 5 N. W. [2d] 495):

"It is contended that the fog was a distracting circumstance. Distracting from what? What does it draw the driver's attention away from or to? It was a warning of the most forceful and potent character directing the driver's attention to the necessity resting upon him to drive carefully and slowly enough to admit of stopping to avoid striking any object which might reasonably be expected to be upon the highway. Other roads intersect highways. Railroads intersect highways at grade. People travel such intersecting roads. Trains move across such grade crossing, having the right of way, as the court charged. Other vehicles might be traveling on the same highway at slow speed. Plaintiff was charged with that knowledge and nevertheless drove at a speed which prevented him from stopping in time to avoid a collision. If the fog was as thick as he claims, the duty devolved upon him to exercise care commensurate with the extreme hazard to which it exposed him."

Mlenek v. Fleming, 224 Minn. 38, 27 N. W. (2d) 800, involved a collision at a railroad crossing between plaintiff's car and one of defendant's freight trains in which a verdict was returned for the plaintiff. On appeal from an order denying the alternative motion of defendant for judgment or for a new trial, this court reversed and ordered judgment for the defendant. We held, among other things, that where a motorist driving at night approached a railroad crossing with which he was familiar at a rate of speed which did not permit him to stop within the distance illuminated by his lights and collided with a freight train standing on the crossing, he was guilty of contributory negligence as a matter of law.

A thorough discussion of the principles involved here appears in Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104. The court held there that driving at such a speed that one cannot stop within the distance illuminated by his headlights

does not necessarily constitute negligence as a matter of law. "To adopt the 'range of vision' rule as a rigid formula to be applied regardless of the circumstances would be unnecessarily severe as well as impractical in many situations." (244 Minn. 160, 69 N. W. [2d] 107.) However, plaintiff there was thoroughly familiar with the street involved; he knew that the lighting conditions were not good; and having crossed two of several spur tracks prior to the accident, he realized that there were more ahead. In those circumstances, much like those in the instant case, the court held (244 Minn. 161, 69 N. W. [2d] 107):

"* * * It is not conceivable that under such circumstances any reasonably prudent person would travel at a speed which would not permit him to stop within the distance illuminated by his headlights. Traveling at a speed which would not permit him to so stop in that area under the conditions known to exist would be an invitation to disaster and clearly, we feel, would constitute negligence as a matter of law."

Applying the standard of care required of a reasonably prudent person to plaintiff's conduct, it is our opinion that he was guilty of contributory negligence as a matter of law. He had traveled the highway and gone over the railway crossing involved many times; he knew that railroad warning signs were placed at intervals along the route and that foggy conditions existed at times, yet he continued to travel 10 to 15 miles per hour, in a fog which he said was so thick that he could not even see the warning signs. If the fog was as dense as he claims it was, he was approaching a known railroad crossing under extremely hazardous conditions, which imposed upon him the duty of using care commensurate with those conditions. Olson v. Duluth, M. & I. R. Ry. Co. *supra.* Even viewing the evidence in the light most favorable to plaintiff, it is our opinion under the facts and circumstances here that he was guilty of negligence as a matter of law.

Plaintiff raises other issues, asserting negligence on the part of defendant in its (a) failure to properly blow the whistle or ring the bell for the crossing; (b) failure to maintain a proper lookout; and (c) failure to provide adequate signals warning of the presence of the

extrahazardous crossing and of the approaching train. While those issues might well have presented jury questions under the conflicting evidence we need not consider them in view of our decision as to the contributory negligence of the plaintiff.

Affirmed.