[No. 34334. Department Two. June 12, 1958.]

JOHN SKARPNESS *et al., Respondents,* v. THE PORT OF SEATTLE, *Appellant.*

FRITZ WAAGE *et al., Respondents,* v. THE PORT OF SEATTLE, *Appellant.*[1]

---

[1]Reported in 326 P. (2d) 747.

*Hullin & Ehrlichman and Skeel, McKelvy, Henke, Evenson & Uhlman,* for appellant.

*Eli M. Paulson, Wright, Booth & Beresford,* and *Thor P. Ulvestad,* for respondents.

FOSTER, J.—Respondents, plaintiffs below, recovered judgment against appellant, port of Seattle, defendant below, for loss by fire of fishing gear placed by them in lockers rented from appellant. The port of Seattle appeals.

The port of Seattle maintains a number of net sheds which are rented by commercial fishermen, who moor their vessels at the port's facilities, to store their nets and other fishing gear.

The shed in question was of frame construction, two hundred fifty feet long, fifty feet wide and thirty feet high. It consisted of one large open room without interior walls, and was divided into three levels, each fitted with lockers. For a stipulated moorage rental, locker space was included. Each respondent had exclusive control and dominion over his own locker by means of his own lock and key. The appellant did not have access to any locker. This shed (shed No. 1) was the least desirable from the standpoint of fire hazard, but the charges for its use were less. The doors to the shed in question were never locked, and no attempt was made by the appellant to restrict the entry of any person. The appellant employed a night watchman and maintained some fire-fighting equipment.

The watchman made his rounds, on the night in question, without discovering fire. Shortly thereafter, fire totally destroyed net shed No. 1 and all of the gear which the respondents had placed in their rented lockers. The evidence is that the rapid progress of the fire and the total destruction of the building was attributable to the shed's design. It was of open construction, with ventilating louvers extending the entire length of the building. The shed was not equipped with an automatic sprinkler system, nor were there dividing fire walls. Laws of 1933, chapter 154, § 3, p. 555, provides, in part, as follows:

"Every warehouseman shall furnish and supply such warehouses, buildings, structures, service, instrumentalities, and facilities that shall be safe, adequate and efficient and in all respects just and reasonable."

An ordinance of the city of Seattle, enacted several years after this shed was built, requires fire walls or, in the alternative, an automatic sprinkler system. Both were absent.

The trial court held the appellant, port of Seattle, liable upon two grounds: (1) that it had not furnished a safe, adequate and efficient building; and (2) that it had not built a fire wall in the shed nor, in the alternative, equipped it with a sprinkler system.

The court was of the opinion[2] that ordinarily the plaintiffs' contributory negligence in storing in such a structure would bar plaintiffs' recovery, but that contributory negligence did not apply because defendant failed in its statutory duty to furnish a safe building.

The lack of fire walls, the lack of an automatic sprinkler system, and the existence of ventilating louvers were as apparent to the respondents as to anyone else. Indeed, finding of fact No. 7-A is as follows: "That the danger of the situation was apparent to both the plaintiffs and defendant."

Moreover, the rentals charged for lockers in this shed were the lowest charged by the port of Seattle for any such facilities at its Salmon bay site. For a larger rental, other warehouses constructed of corrugated steel and concrete and equipped with sprinklers were available to respondents. The choice was made by respondents, not by the appellant, port of Seattle.

The trial court erred in holding that contributory negligence was not a defense or that the maxim *volenti non fit injuria* did not apply.

---

[2]"In fact, I think that that building and that kind of storage is just about as unsafe a proposition as could be maintained and I think the owners of this property would ordinarily be guilty of contributory negligence in storing it there at all, but as I said I don't believe that prevents their recovery here because the Port did not do the statutory duty of furnishing a safe building."

■ If the purpose of the statute itself would be thwarted by allowing the defense of contributory negligence, it will not be entertained. Illustrative of such statutes are those designed to protect people against their own negligence and place the entire burden upon the defendant, such as the Federal safety appliance act, factory acts, and child labor acts. On the other hand, contributory negligence is a bar if the statute merely fixes a standard of care, and both the warehouse act and the city ordinance are within the latter classification. The law in the United States is summarized in the following paragraph from Prosser on Torts (2d ed.) 283, 289, chapter 10, § 51:

"The effect of contributory negligence upon the liability of a defendant who has violated a statutory duty is a matter of the legislative purpose which the court finds in the statute. If it is found to be intended merely to establish a standard of ordinary care for the protection of the plaintiff against a risk, his contributory negligence with respect to that risk will bar his action as in the case of any common law negligence. But there are certain unusual types of statutes, such as child labor acts, factory acts for the protection of workmen, or railway fencing or fire statutes, which have been construed as intended to place the entire responsibility upon the defendant, and to protect the particular class of plaintiffs against their own negligence. In such a case, as in the case of the statutes involving the age of consent, the object of the statute itself would be defeated if the plaintiff's fault were a defense, and the courts refuse to recognize it."[3]

■ Much confusion exists as to the relationship between contributory negligence and assumption of risk or *volenti non fit injuria*. Generally, it may be said:

"As opposed to contributory negligence, assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct." *Hay v. Nance*, 119 F. Supp. 763, 771.

---

[3] Such, likewise, is the law in England (*Caswell v. Powell Duffryn Assoc. Collieries*, 3 All E. R. 723 (1939), 1940 App. Cas. 152, although the high court of Australia took the opposite view in *Bourke v. Butterfield & Lewis*, 38 Commonwealth L. Rep. 354 (1926).

The supreme court of Minnesota has said that assumption of risk is only a phase of contributory negligence. *Swenson v. Slawik*, 236 Minn. 403, 53 N. W. (2d) 107; *Schrader v. Kriesel*, 232 Minn. 238, 45 N. W. (2d) 395; *Hubenette v. Ostby*, 213 Minn. 349, 6 N. W. (2d) 637.

In *Ewer v. Johnson*, 44 Wn. (2d) 746, 758, 270 P. (2d) 813, we said:

"The ancient maxim, *volenti non fit injuria*, means, 'That to which a person assents is not esteemed in law an injury.' The distinction between the doctrine of assumption of risk and the principle involved in the maxim, *volenti non fit injuria*, is that the 'doctrine' applies only to cases arising out of the relationship of master and servant or involving a contractual relationship, whereas the 'maxim' applies independently of any contract relation. However, the general theory underlying both the doctrine and the maxim is the same. While the defenses of assumption of risk, *volenti non fit injuria*, and contributory negligence are closely allied, they are founded on separate principles of law; contributory negligence involving some breach of duty on the part of the injured person, whereas assumption of risk or *volenti non fit injuria* may bar recovery even though the injured person may be free from contributory negligence. *Walsh v. West Coast Coal Mines*, 31 Wn. (2d) 396, 197 P. (2d) 233."

Prosser points out the distinction (Prosser on Torts (2d ed.) 303, 313, chapter 10, § 55), but it is not necessary to further explore the subject because he concludes: "Where the defendant's negligence consists of the violation of a statute, the plaintiff may still assume the risk."

To impose liability upon the appellant under the circumstances of this record would make it an insurer of the least desirable storage shed, while as to the newer, more fire-resistant structures, which conform to the requirements of the city ordinance, it would owe only a duty of ordinary care. Respondents voluntarily assented to the existing fire hazard. The applicable rule of law is expressed in the maxim *volenti non fit injuria*.

The appellant did have storage facilities which complied with the city ordinance and the warehousemen's act of 1933. The respondents, of their own free will, selected the

frame shed which they knew to be devoid of the fire protection devices required by the ordinance. Indeed, the trial court found that the danger of the situation was apparent to both the plaintiffs and the defendant. The respondents voluntarily assumed the liability. The situation is quite akin to that presented in *Kavafian v. Seattle Baseball Club Ass'n,* 105 Wash. 215, 177 Pac. 776, 181 Pac. 679. There a spectator, desiring to witness a baseball game, took a seat in the unscreened section of the grandstand when there were screened seats available, knowing the danger of being struck by a foul ball. The court there said:

"The place in which he could have taken a seat would have fully protected him against the ordinary and usual hazards incident to witnessing the game in question, but he chose to sit elsewhere and substitute for that safety the compensating facility of vision. If there was a chance of danger, the respondent voluntarily took it. Having purchased a ticket which offered him a choice of two positions, he, with full knowledge of the risk of injury, chose the more dangerous position."

It is stated in 52 C. J. S. 81, 96, § 423 (h(2)) as follows:

"Where a tenant directly exposes his property to the danger of injury from defects of which he has knowledge, he may not recover for injury to the property in an action against the landlord. . . ."

The supreme court of Arkansas recently had occasion to examine this problem in *Delta Ice Co. v. Williams,* 207 Ark. 143, 179 S. W. (2d) 656, and announced its conclusions in the following paragraph:

"Negligence of a bailor contributing to injury of stored goods is ordinarily a bar to an action by the bailor against the bailee to recover for such damage. 'The general rules governing contributory negligence apply in cases of bailment to a warehouseman, and, in accordance therewith, if the negligence of the bailor or his servants contributes to loss or injury of stored goods, the warehouseman is not liable. . . .' 67 C. J. 520. 'The contributory negligence of the depositor is generally a bar to the recovery of damages from a warehouseman who has been guilty of negligence in the care of stored property.' 27 R. C. L. 990. In the case of *Holt Ice & Cold Storage Co. v. Arthur Jordan Co.,*

25 Ind. App. 314, 57 N. E. 575, it was held that if the bailor, at the time of the storage, knows the circumstances under which property would be stored and knows that same would be injured thereby, there could be no recovery. To the same effect was the ruling of the Supreme Court of Kansas in the case of *Parker v. Union Ice & Salt Co.*, 68 Am. St. Rep. 383, 59 Kan. 626, 54 Pac. 672, in which it was said: 'A bailor, who knows the unfitness of the place of storage of goods provided by his bailee, or who has equal opportunities with the bailee of knowing it, who sees and inspects the place of storage, and who, there being no latent defects in it, passes judgment upon it as a fit place for his purposes, will be deemed equally at fault with the bailee if damage result to his goods.' This was quoted and approved in the case of *Ray. v. Alexandria Ice & Cold Storage Co., Inc.*, 166 La. 1091, 118 So. 323. Other cases exemplifying this rule are: *Winn v. American Express Co.*, 159 Ia. 369, 140 N. W. 427, 44 L. R. A., N. S. 662; *Betts v. Farmers Loan & Trust Co.*, 21 Wis. 80, 91 Am. Rep. 460."

Respondents knowingly placed their goods in a shed which was without fire protection but had a lower rental when safer facilities were available at a higher rental. The choice was made by them, and the risk follows the choice.

The judgment is reversed, and the case remanded to the court below with instructions to dismiss the action.

HILL, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

August 18, 1958. Petition for rehearing denied.