Art STRAIN and Verla Strain, as the Special Administrators of the Estate of Tyler Strain, Deceased, Plaintiffs and Appellees,

v.

Harry CHRISTIANS, Defendant and Appellant.

No. 17403.

Supreme Court of South Dakota.

Argued Oct. 21, 1991.

Decided April 1, 1992.

Gary Thimsen, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellant.

WUEST, Justice.

Art and Verla Strain (The Strains), as special administrators of the estate of their son Tyler Strain (Tyler), deceased, commenced a wrongful death and survivorship action against Appellant, Harry Christians (Christians). The matter came on for trial before a jury. The jury returned a verdict in the Strains' favor in the amount of $75,-000. Christians appeals. We affirm.

Tyler was fourteen years of age. He had lived on a farm most of his life. At the time of Tyler's death, the Strains lived on a farm approximately one-quarter of a mile from Christians' farm. Tyler worked for his father on the family farm, and, in 1986, began to work for Christians at his farm after school. Tyler did not operate Christians' two big tractors. During his second year with Christians, Tyler started stacking hay bails and used small tractors and their attachments.

In the fall of 1987, when Tyler was thirteen years old, Mr. Strain began teaching him to use and operate the family's tractors, including a 1974 International model 1066 tractor.[1] After Tyler had begun his third year of employment with Christians, in April 1988, he was allowed to operate Christians' 1973 International model 1066 tractor in the farm field, stacking hay and pulling implements. The 1973 model 1066 was essentially the same as the Strains' 1974 model 1066 tractor. Both the Strains' and Christians' tractors were more powerful than "twenty PTO horsepower." Christians allowed Tyler to operate his tractor alone.

Tyler's parents knew at the time Tyler was operating Christians' tractor and did not object. Mr. Strain testified he had helped Christians in 1986 and had driven Christians' tractor. He noted the steering on the tractor was loose and Christians' tractor was difficult, if running at a high speed, to "keep ... between the ditches."

Christians requested Tyler take a tractor operation safety course prior to his third year of employment with Christians. Completion of such a course permits employers to employ fourteen to sixteen-year-olds in an occupation involving such activities without violating the Fair Labor Standards Act (F.L.S.A.), discussed more fully in part I. On June 7–8, 1988, the Brookings County Extension Office put on a twenty-hour "Hazardous Occupation Safety Course" pursuant to part 570 of the Code of Federal Regulations,[2] which will be discussed in more detail in part I.

Tyler successfully completed two written tests and a driving test during this program. On June 8, 1988, the county extension agent in charge of the safety program issued to Tyler a certificate certifying he had successfully completed the training program. Tyler was then certified to operate a tractor with over "twenty PTO horsepower," and to "[connect or disconnect] an implement or any of its parts to or from such a tractor."[3] Mr. Strain acknowledged he and his wife were both aware Tyler had taken and successfully completed a tractor and farm machinery safety course at the request of Christians.

On the morning of June 11, 1988, Tyler went to work at Christians' farm. He was to stack hay with Christians' tractor; consequently, it was equipped with a bucket loader and a double bale fork. Tyler drove Christians' tractor to the repair shop of

---

1. Mr. Strain testified that Tyler had operated the Strains' model 1066 tractor on at least one occasion. Strain testified he would stay with Tyler for an hour training him to drive the tractor and then tried to stay in the area to keep an eye on him.

2. Generally, during the extension office's course, instructors go over various materials with students relating to tractor safety. Next, the instructors show students the actual parts of

the tractors. Each student is then required to pass a written exam. Finally, each student must complete a driving test where they pull a two-wheel implement on the back of a tractor and maneuver through a driving course.

3. The program Tyler completed actually certified him to work with other machinery in addition to powerful tractors.

Lyle Krueger (a self-employed welder and repairman) for the purpose of welding a hair-line crack on the reservoir of the loader. In response to a question by Krueger, Tyler stated he was having no problems with the tractor in its operation. At morning's end, Tyler, Christians, and another farm hand went to town to have lunch. After lunch, Christians took Tyler to where the tractor was parked and told him to drive it back to Christians' home. Christians then went home to take a nap. Shortly thereafter, the tractor was found upside down and on fire. It had rolled over, smashing the cab with Tyler inside. Tyler was killed.

The investigating officer stated it appeared the tractor had eased off the gravel at a very slight angle over a distance of approximately 100 to 125 feet. It appeared Tyler jerked the wheel of the tractor to get back onto the roadway surface. The tractor then slipped sideways and overturned.

The Strains commenced a wrongful death and survivorship action against Christians, alleging Christians had employed Tyler in an occupation dangerous to his life and health as prohibited by SDCL 60–12–3 (1978) (South Dakota's child labor statute).[4] Christians denied he had employed Tyler in a dangerous occupation. In the alternative, he asserted Tyler's employment was with the knowledge and consent of his parents, and Tyler's own negligence proximately caused his death.

During trial, the court ruled that neither party could present evidence pertaining to the contributory negligence of Tyler, or of Mr. or Mrs. Strain. The trial court refused to instruct the jury on the issues of contributory negligence of Tyler or of the Strains. Christians objected. At the end of the

plaintiffs' case, Christians' counsel moved for a directed verdict arguing first, federal law preempted imposing civil liability against Christians under SDCL 60–12–3 and second, there was insufficient evidence for the jury to find Tyler was employed in an occupation hazardous to life or health. The trial court denied that motion. The jury returned a $75,000 verdict in favor of the Strains. The trial court entered judgment against Christians for that amount.

Christians appeals raising four issues:

I. Whether SDCL 60–12–3 has been preempted by the F.L.S.A. and regulations promulgated pursuant thereto.

II. Whether the trial court properly refused to admit testimony regarding the contributory negligence of Tyler and to give an instruction on the issue of contributory negligence of Tyler.

III. Whether the trial court properly refused to admit testimony regarding the parents' knowledge of and consent to Tyler's employment and to give an instruction on the defense of contributory negligence of the parents.

IV. Whether the jury verdict was against the law, and whether the $75,000 award was supported by sufficient evidence.

We will discuss these items seriatim.

## I. CHILD LABOR STATUTE PREEMPTION.

■ Sections 3 and 12 of F.L.S.A. are substantively similar to SDCL 60–12–3. Section 12[5] prohibits employing "oppressive child labor" in commerce, and Section 3[6] provides employment of a child under

---

4. SDCL 60–12–3 (amended 1991) provides:
    No child under sixteen years of age shall be employed at any time in any occupation dangerous to life, health, or morals.... Violation of this section is a Class 2 misdemeanor. This section shall not apply to minors employed by their parents.

5. F.L.S.A. § 12 states: "No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 212(c) (1988).

6. F.L.S.A. § 3 defines "oppressive child labor" as:
    [A] condition of employment under which (1) any employee under the age of sixteen years is employed by an employer (other than a parent or a person standing in place of a parent employing his own child or a child in his custody under the age of sixteen years in an occupation other than manufacturing or mining or an occupation found by the Secretary of Labor to be particularly hazardous for

the age of sixteen by any non-parent constitutes "oppressive child labor" unless the Secretary of Labor provides by regulation or by order that the employment of children between fourteen and sixteen years of age in occupations other than mining or manufacturing does not constitute "oppressive child labor." 29 U.S.C. §§ 203(*l*), 212(c) (1988). An employer violating F.L.S.A. is subject to substantial criminal and civil penalties. 29 U.S.C. §§ 215–217 (1988).[7]

Subpart E–1 of Chapter 5 of Title 29 of the Code of Federal Regulations addresses "occupations in agriculture particularly hazardous for the employment of children below the age of 16." According to the Secretary of Labor, "[o]perating a tractor of over 20 PTO horsepower, or connecting or disconnecting an implement or any of its parts to or from such a tractor[ ]" is "particularly hazardous employment [for] children below the age of sixteen." 29 C.F.R. § 570.71(a)(1) (1990). Thus, employment of a child under sixteen years of age by a non-parent in such an occupation would normally constitute "oppressive child labor."

Pertinent exemptions do exist to the general rule stated above. Those exemptions are contained in 29 C.F.R. § 570.72 (1990):

(b) *Federal Extension Service.* The findings and declaration of fact in [section] 570.71(a) shall not apply to the employment of a child under 16 years of age in those occupations in which he has successfully completed one or more training programs described in paragraph (b)(1), (2), or (3) of this section provided he has been instructed by his employer on safe and proper operation of the specific equipment he is to use; is continuously and closely supervised by the employer where feasible; or, where not feasible, ... his safety is checked by the employer at least at midmorning, noon, and mid-afternoon.

Subparagraphs (1)–(3) of 29 CFR § 570.72(b) describe various training programs, all of which require an employee or potential employee (1) to be fourteen years of age or older; (2) to complete a training program on safe operation of machinery; (3) to successfully complete a written examination covering safety; and (4) to demonstrate his or her ability to operate machinery safely. In addition, the regulation requires the employer to keep on file a certificate stating the child has completed all the required training and testing.

Where a child obtains certification pursuant to such a program, as Tyler did, an employer may hire him to operate tractors of greater than twenty PTO horsepower or other machinery without subjecting himself to criminal and civil penalties under F.L.S.A. Christians contends this statutory and regulatory scheme preempts South Dakota's child labor statute. We disagree.

We have held whether employment is dangerous to the child's "life, health or morals" is a question of fact for the jury. *Koenekamp v. Picasso*, 64 S.D. 567, 570, 269 N.W. 74, 77 (1936). *Accord Dillman v. Madsen*, 688 F.Supp. 1402, 1405 (D.S.D. 1988). Section 2 of F.L.S.A. states the policy of F.L.S.A. is to correct labor conditions detrimental to the health and well-being of workers. 29 U.S.C. § 202 (1988). Section 18 further indicates Congress' intent was to provide a minimum floor for child protection, not a ceiling beyond which states could not exceed. 29 U.S.C. § 218 (1988). *See also* 48A Am.Jur.2d *Labor and Labor Relations* § 2210 (1979).

---

the employment of children between the ages of sixteen and eighteen years or detrimental to their health or well-being) in any occupation.... The Chief of the Children's Bureau [Secretary of Labor] shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Chief of the Children's Bureau [Secretary of Labor] determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being. 29 U.S.C. § 203(*l*) (1988).

7. A violation of § 12 subjects an employer to a fine of not more than $10,000 or, if not a first offense, to a jail term of up to six months plus civil penalties. 29 U.S.C. §§ 215, 216 (1988).

Section 18 provides: "[N]o provision of this Act relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this Act." 29 U.S.C. § 218 (1988). *Accord* 29 C.F.R. § 570.50(a) (1990). Indeed, regulations promulgated pursuant to F.L.S.A. expressly state: "[C]ompliance with [F.L.S.A.] . . . does not relieve any person of liability under other laws that establish higher child labor standards than those prescribed by or pursuant to the act." 29 C.F.R. § 570.129 (1990). Thus, if an individual state where a child is employed has a stricter child labor code and standard of employment, the federal law will adopt and apply the state's stricter standard. P. McGovern, *Childrens Rights and Child Labor: Advocacy on Behalf of the Child Worker*, 28 S.D.L.Rev. 293, 297–98 (1983).

■ Permitting an employer to be held liable for civil damages which result from his violation of SDCL 60–12–3 would not create an "obstacle to the accomplishment and execution of the full purposes and objectives" of F.L.S.A.'s child labor provisions. *See Fidelity Federal Sav. & Loan Ass'n. v. De La Cuesta*, 458 U.S. 141, 156, 102 S.Ct. 3014, 3024, 73 L.Ed.2d 664, 677 (1982) (actual conflict exists between regulations promulgated by Federal Home Loan Bank Board and state court decision); *Doctors Hospital, Inc. v. Silva Recio*, 558 F.2d 619, 622 (1st Cir.1977). Indeed, F.L.S.A. provides no private federal cause of action for its violation. *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 373 (S.D.1991); *Breitwieser v. K.M.S. Industries, Inc.*, 467 F.2d 1391, 1394 (5th Cir.1972), *cert. denied*, 410 U.S. 969, 93 S.Ct. 1445, 35 L.Ed.2d 705 (1973). Therefore, the Secretary of Labor's findings regarding employment of safety trained fourteen to sixteen-year-olds did not preempt the jury's conclusion that Christians employed Tyler in an "occupation dangerous to life, health, or morals." *See Jensen*, 469 N.W.2d at 373 (F.L.S.A. does not preempt South Dakota's worker's compensation law); *Maccabees Mut. Life Ins. Co. v. Perez–Rosado*, 641 F.2d 45, 46 (1st Cir.1981) (F.L.S.A. does not prohibit

state legislation in the area of wages or working conditions, nor does it implicitly prohibit state regulation by occupying the whole field and leaving no room for supplementary state provisions); *Divine v. Levy*, 36 F.Supp. 55, 57–58 (D.C.La.1940). The Secretary's findings merely placed Christians' act of employing Tyler to operate a tractor with greater than twenty PTO horsepower outside F.L.S.A.'s prohibitions against "oppressive child labor."

## II. CONTRIBUTORY NEGLIGENCE OF THE DECEDENT.

■ During the trial, the court ruled that neither party would be permitted to present evidence regarding the contributory negligence of Tyler. The trial court refused, despite objections by Christians, to instruct the jury on the defense of contributory negligence.

Whether an occupation is dangerous to the life, health or morals of a child was determined in *Koenekamp* to be a jury question. Thus, in this case, Tyler's safety training was relevant to the determination of whether a statutory violation existed. The trial court properly admitted evidence of Tyler's safety training. The *Koenekamp* court also held that violation of the child labor statute was sufficient, standing alone, to render an employer liable in the event of injury. *Koenekamp*, 269 N.W. at 77. However, the *Koenekamp* court declined to decide whether contributory negligence constituted a defense to a cause of action alleging a violation of SDCL 60–12–3. *Id.* As the *Koenekamp* court noted, a split of authority exists as to this issue. *Id.* This split exists because different courts have given different effects to the enactment of child labor statutes. *See* Annotation, *Contributory Negligence as Defense to Cause of Action Based Upon Violation of Statute*, 171 A.L.R. 894 (1947), *superseded by* 10 A.L.R.2d 853 (1950).

Some courts have held violation of a child labor statute constitutes "negligence per se." *See, e.g., Dillman*, 688 F.Supp. at 1403–04, 1405. The plaintiff is required to prove violation of the statute proximately

caused the child's injuries. Accordingly, the child's contributory negligence is a defense to such a cause of action. *See Darsam v. Kohlmann,* 123 La. 164, 48 So. 781 (1909) (contributory negligence a defense where child acted in violation of instructions and duties, reasoning that child labor statutes should not be construed to abrogate the ordinary rules relating to contributory negligence unless the statute is so worded as to leave no doubt such defense is to be excluded); *Armstrong's Adm'r. v. Sumne & Ratterman Co.,* 211 Ky. 750, 278 S.W. 111, 115 (1925) (in cause of action to recover for child's death, child's contributory negligence constitutes a defense); *Besonen v. Campbell,* 243 Mich. 209, 220 N.W. 301, 303 (1928).

However, the overwhelming majority of jurisdictions which have addressed this issue have held that contributory negligence is not a defense. Typically, such courts have reasoned that child labor statutes are intended to place the entire responsibility upon the employer so that he is liable for injury to the child even though he has acted in good faith. The plaintiff need only show a violation of the statute, which must be resolved by the jury in the first instance, and injury to the child. Legal or proximate causation is not in issue because the legislature has determined causation exists. In short, once a violation is established, these cases have construed child labor statutes to impose strict or absolute liability. W. Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn.L.Rev. 105, 118–120 (1948); *D.L. by Friederichs v. Huebner,* 110 Wis.2d 581, 329 N.W.2d 890, 912–18 (1983) (providing detailed discussion of the difference between negligence per se and absolute liability). The following cases hold contributory negligence is not a defense: *Boyer v. John-son,* 360 So.2d 1164, 1169 (La.1978); *Vincent v. Riggi & Sons, Inc.,* 30 N.Y.2d 406, 285 N.E.2d 689, 693, 334 N.Y.S.2d 380, 386, 56 A.L.R.3d 1157, 1163 (1972); *Boyles v. Hamilton,* 235 Cal.App.2d 492, 45 Cal.Rptr. 399, 403 (1965); *Pitzer v. M.D. Tomkies & Sons,* 136 W.Va. 268, 67 S.E.2d 437, 442 (1951) (overruling *Norman v. Virginia–Pocahontas Coal Co.,* 68 W.Va. 405, 69 S.E. 857 (1919)); *Langston v. Degelia,* 186 S.W.2d 738, 739 (Tex.Civ.App.1945); *Tampa Shipbuilding & Engineering v. Adams,* 132 Fla. 419, 181 So. 403, 406–07 (1938) (reaffirmed in *Baldridge v. Hatcher,* 266 So.2d 112 (Fla.App.1972)); *Dusha v. Virginia & Rainy Lake Co.,* 145 Minn. 171, 172, 176 N.W. 482, 482, 23 A.L.R. 632, 634 (1920); *Karpeles v. Heine,* 227 N.Y. 74, 124 N.E. 101, 104 (1919); *Louisville, H. & St.L.Ry.Co. v. Lyons,* 155 Ky. 396, 159 S.W. 971, 975–76 (1913) (a master is an insurer of the safety of child employees); *Pinoza v. Northern Chair Co.,* 152 Wis. 473, 140 N.W. 84 (1913) (violation of child labor statute equivalent to gross negligence; contributory negligence is not a defense); *Lenahan v. Pittston Coal Min.Co.,* 218 Pa. 311, 67 A. 642 (1907).

As stated in *Dusha,* "The purpose of the [child labor] statute is to protect children in life and limb by prohibiting their employment in dangerous occupations where[,] because of their immaturity[,] they are likely inappreciative of risks and prone to be careless and heedless." *Dusha* 176 N.W. at 482, 23 A.L.R. at 634. Courts holding employers absolutely liable typically reason that "the evident purpose of the statute would be defeated if the employer were permitted to set up the contributory negligence of the child, and that the legislature must have intended that no such defense should be available."[8] Prosser, *supra,* at

---

**8.** Restatement (Second) Torts § 483 (1965) provides:

    **§ 483. Defense to Violation of Statute**
    The plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, *unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant.*

The comments to § 483 provide in pertinent part:

    *c.* There are, however, exceptional statutes which are intended to place the entire responsibility for the harm which has occurred upon the defendant. *A statute may be found to have that purpose particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves.* Thus a statute which prohibits

119–20 (citing *Karpeles*, 124 N.E. 101; *Pinoza* 140 N.W. 84; *Lyons*, 159 S.W. at 975–76). *Accord* Annot., *supra*, 10 A.L.R.2d at 855; W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 65, at 461–62 (1984) (hereinafter *Prosser and Keeton*).

Absolute liability has generally been limited to situations where the cause of action was based upon the violation of a particular type of statute—one enacted for the protection of a particular class of persons who are incapable of protecting themselves. Restatement (Second) of Torts § 483 comment c. *See also Dusha*, 176 N.W. 482; *Skarpness v. Seattle*, 52 Wash.2d 490, 326 P.2d 747, 749 (1958). The child labor statute is just such a statute. Restatement (Second) of Torts § 483 comment e.

*The purpose of our child labor statute is to protect children from their own negligence.* The statute is a declaration that children under the specified age *do not possess the judgment, discretion, and caution essential to engagement in the prescribed occupation.* 53 Am.Jur.2d *Master and Servant* § 226 (1970). To hold a child subject to the defense of contributory negligence *would emasculate the child labor statute.* Indeed, in most cases, it is the child's negligence which is a substantial cause of the injury—he sticks his hands into an auger to clear it without shutting off the power, or he attempts to disconnect machinery without turning off the power. It is exactly this result that the

legislature was attempting to prevent in outlawing the employment of youth to perform such activities. To subject a child to the contributory negligence defense would defeat this goal.

We hold, consonant with the foregoing, that a wrongful death action based on an alleged violation of SDCL 60–12–3 is not subject to the defense of contributory negligence on the part of the deceased. In doing so, we recognize the legislature's goal in passing the child labor statute to protect children from employment in dangerous occupations where, because of their immaturity, they are likely inappreciative of risks and prone to carelessness.

## III. CONTRIBUTORY NEGLIGENCE OR CONSENT OF THE PARENTS.

■ The trial court refused to admit evidence concerning the Strains' consent to Tyler's employment. Both of Tyler's parents were aware of Tyler's employment. They were aware Tyler had obtained a certificate permitting his employer to allow him to operate powerful tractors without violating F.L.S.A. They were aware Tyler's duties would include operating Christians' International Model 1066 tractor.

A wrongful death action is brought by a deceased's beneficiaries to recover for losses sustained as a result of the victim's death. *Prosser & Keeton, supra*, § 127. *See also Flagtwet v. Smith*, 367 N.W.2d 188 (S.D.1985). Whether the parents' con-

---

the sale of firearms to minors may be clearly intended, among other purposes, to *protect them against their own inexperience, lack of judgment, and tendency toward negligence, and to make the seller solely responsible for any harm to them resulting from the sale.* In such a case the purpose of the statute would be defeated if the contributory negligence of the minor were permitted to bar his recovery.

. . . . .

*e. Child labor statutes. Statutes forbidding the employment of children or their employment in dangerous occupations below a certain age are customarily construed as intended to protect them against carelessness and even recklessness incidental to their immaturity.*

. . . . .

*f.* If a child labor statute is construed as enacted for the purpose stated in this Section,

a child plaintiff who bases his action upon the violation of the statute is not barred from recovery by any form of contributory negligence. Thus, he is not barred from recovery by voluntarily exposing himself to a risk which an adult would recognize as unreasonable, nor by conduct which in other respects would be negligent or even reckless in an adult, as when his careless inattention brings him into contact with moving machinery. (Emphasis supplied.)

sent to employment of their child in a dangerous occupation constitutes a bar to recovery under a wrongful death cause of action also presents an issue of first impression in this state. The general rule under statutes creating a cause of action for wrongful death states a beneficiary's recovery is barred if the beneficiary himself is guilty of contributory negligence which proximately contributes to the death of the decedent. Annotation, *Contributory Negligence of Beneficiary as Affecting Action under Death or Survival Statute*, 2 A.L.R.2d 785, 788 (1948). Some courts have held where a parent procures or consents to a child's employment in violation of a child labor statute, that parent may be barred from recovering for the wrongful death of the child, even though the wrongful death proximately results from employment in disobedience of the statute. *Totten v. Parker*, 428 S.W.2d 231, 237 (Ky.1968); *Lucas E. Moore Stave Co. of Georgia v. Overbee's Adm'r.*, 262 S.W.2d 828, 829–30 (Ky.1953); *Besonen*, 220 N.W. at 303; *Armstrong's Adm'r*, 278 S.W. at 115; *Swope v. Keystone Coal & Coke Co.*, 78 W.Va. 517, 89 S.E. 284, 285 (1916).

Other courts, however, have held where a child is employed in violation of a child labor statute, a parent's consent to that employment does not bar recovery for the child's wrongful death. *Boyer*, 360 So.2d at 1171; *Tampa Shipbuilding*, 181 So. at 407; *Dusha*, 176 N.W. at 483, 23 A.L.R. at 635. *See also Pinoza*, 140 N.W. at 86–87; *Lyons*, 159 S.W. at 975–76. The *Dusha* court recognized the policy behind child labor statutes is to penalize employers who employ children in violation of the statute, not to impose a penalty on the parents for permitting such employment. The *Dusha* court implied permitting a parent's consent to bar recovery for the child's wrongful death would contravene the legislature's

policy of protecting the life and limb of children by discouraging their employment in dangerous occupations. *Dusha*, 176 N.W. at 483, 23 A.L.R. at 635.[9] We find this reasoning persuasive.

It is true the parents here knew of Tyler's employment. Certainly that would be true in most any case where a child is employed in a dangerous occupation. The statute, however, is aimed at discouraging employers from hiring children to perform such tasks, not at discouraging parents from permitting such employment. Were we to hold the Strains' consent to Tyler's employment bars their recovery, the only parents who could recover for the death of their child would be those ignorant of their child's occupation. In addition, such a holding would cause inequitable results. If a parent consented to his child's employment and the child was injured, the child could recover regardless of the parent's consent because he could have a guardian bring the cause of action on his behalf. On the other hand, if the child was killed, the parents, because they are the beneficiaries, would be barred from recovering because of their own negligence. Thus, the employer would be rewarded because the child was killed! These results were certainly not intended by the legislature when it enacted the child labor statute. Therefore, we hold a parent's consent to employment of his or her child in a dangerous occupation does not bar the parent's recovery in a wrongful death cause of action brought pursuant to the child labor statute.

## IV. SUFFICIENCY OF THE JURY VERDICT.

■ Christians' final contention concerns the jury's verdict. First, he argues the verdict is against the law, restating the same arguments discussed previously. We need not discuss those issues any further.

---

**9.** While discussing whether contributory negligence was a defense to a cause of action based on a violation of its child labor statute, the Wisconsin Supreme Court stated:

[T]his court should incline to the side according the greatest dignity to legislative efforts to conserve the security of children, against even being employed by their consent and consent

of their parents or guardians, where they will be subjected to serious dangers on account of inadvertently receiving bodily injuries, which evince such supreme care in respect to the matter as to make the employment, of itself, criminal.

*Pinoza*, 140 N.W. at 86–87.

Second, Christians argues the $75,000 jury award is not supported by sufficient evidence.

SDCL 15–6–59(a) (1984) provides in part:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

\* \* \* \* \* \*

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;

SDCL 15–26A–8 (1984) provides:

Such of the matters specified in subdivisions (6) and (7) of § 15–6–59(a) as may have been timely presented to the trial court by motion for directed verdict, request for findings, or other apt motion, offer, or objection may be reviewed on appeal from the judgment without necessity for an application for new trial.

It is well settled, "[i]nsufficiency of the evidence may not be reviewed unless it has been timely presented to the trial court by a proper motion for a directed verdict, request for findings, or other apt motion, offer, objection, or exception." *City of Mitchell v. Beauregard*, 430 N.W.2d 704, 706–07 (S.D.1988) (citing SDCL 15–6–59(a); SDCL 15–6–59(f); SDCL 15–26A–8); *Pearson v. Adams*, 279 N.W.2d 674, 676–77 (S.D.1979); *Schoenrock v. City of Sisseton*, 78 S.D. 419, 425–26, 103 N.W.2d 649, 653 (1960) (defendants precluded from raising the question of excessiveness of the verdict on appeal where they failed to bring to the trial court's attention the particulars in which the evidence was claimed to be insufficient); *Lang v. Burns*, 77 S.D. 626, 632–33, 97 N.W.2d 863, 867 (1959); *Gednalski v. Dell Rapids Quarry Co.*, 70 S.D. 616, 20 N.W.2d 226 (1945).

Nowhere in his brief does Christians state he made any motion to the trial court to overturn the jury's damage award because it was not supported by sufficient evidence. The record does not reflect any "motion for directed verdict ... or other apt motion, offer, or objection" that would preserve Christians' right to appeal on this issue. We hold Christians did not preserve these matters on the record so as to enable this court to engage in appellate review of this issue.

The judgment is affirmed.

HENDERSON, J., concurs with a writing.

MILLER, C.J., concurs specially.

SABERS and AMUNDSON, JJ., dissent.

HENDERSON, Justice (concurring).

In totally joining the majority opinion, I do not believe that it holds that permitting a child to operate a farm tractor renders an employer strictly liable; rather, the employer's liability attaches once the jury finds the statute has been violated, i.e., that the occupation was dangerous to the child.

As I review *Dusha*, cited in the majority opinion, expressing that children "are likely inappreciative of risks and prone to be careless and heedless," it becomes obvious to me from whence this thought is born: Children should be prohibited from being labor lackeys in industry and commerce.

One by one the children died. Industrial Revolution. Social change. Laws changed. Enlightenment. Punish immaturity? No.

A simple child
That lightly draws its breath,
And feels its life in every limb,
What should it know of death?
    William Wordsworth (1770–1850),
    Poet laureate of England [We Are Seven]

And of Tyler Strain, what of him? And children of his age? Should they not be protected by the enlightment of an advanced society?

MILLER, Chief Justice (concurring specially).

I generally agree with the majority holding, but write specially on Issue II concerning the contributory negligence defense.

As the majority states, whether a child is employed in a dangerous occupation is a question for the jury. If they so find, liability under the child labor statute is

absolute. Thus, in this case, the fact that Tyler was certified under the F.L.S.A. to operate the tractor was admissible on the issue of whether the occupation was dangerous. And such evidence was so admitted here. But, to totally exclude such trained individuals from the protections of the child labor statute's protection is a legislative function. It must be remembered that the child labor statute is designed to protect youth from their own careless acts. To subject these children to a contributory negligence defense would, in my opinion, defeat the statute's purpose.

Additionally, I feel compelled to state that I respectfully disagree with Justice Sabers' position that SDCL 32–12–12 and 32–12–22.1 conflict with the majority holding. The fact that Tyler could legally operate certain farm machinery on highways without a license, or without his parents' supervision, could certainly be used to show that his occupation was not dangerous. However, to hold, as Justice Sabers seemingly would, that because a child could legally operate such machinery, *all children* employed *in any such occupation (no matter how dangerous)* are subject to the defense of contributory negligence, makes no sense to me. Applying that theory, an employer who permits a five year old to drive a tractor (and it is legal under SDCL 32–12–22.1) would not be guilty of violating the child labor statute. In addition, it is just as plausible to interpret these statutes as being the legislature's recognition that most farm kids are driving machinery from field to field for their parents, not for some employer.

I am troubled that Justice Sabers' dissent offers no authority for the assertion that Tyler's safety training removed him from the class of persons the child labor statute was designed to protect. SDCL 60–12–3 exempts from its prohibitions employment of children over fourteen years of age to dispense gasoline, diesel fuel and oil at service stations. Thus, the legislature is aware of how to remove certain classes of persons from protection under the statute, if it so chooses. By clear implication, the legislature *did not* intend to remove safety-trained youth farm employees from the child labor statute's protection. In the final analysis, it is certainly within the legislature's realm to exclude from the child labor statute's provisions children who are certified to operate farm equipment pursuant to the F.L.S.A. However, were we to draft another exception into the statute by judicial fiat, we would be invading the legislature's prerogative.

SABERS, Justice (dissenting).

In effect, the majority opinion imposes strict liability on a farmer for hiring a minor, with his parents' consent, to do farm work. In so holding, the majority opinion states:

> The plaintiff need only show a violation to the statute, which must be resolved by the jury in the first instance, and injury to the child. Legal or proximate causation is not in issue because the legislature has determined causation exists. In short, once a violation is established, these cases have construed child labor statutes to impose strict or absolute liability.

.    .    .    .    .

> We hold ... that a wrongful death action based on an alleged violation of SDCL 60–12–3 is not subject to the defense of contributory negligence on the part of the deceased. In doing so, we recognize the legislature's goal in passing the child labor statute to protect children from employment in dangerous occupations where, because of their immaturity, they are likely inappreciative of risks and prone to carelessness.

The majority opinion blindly follows the "majority" position in its conclusion that SDCL 60–12–3 was intended to place all liability upon the employer/farmer for any injury to a minor employee under the age of sixteen without regard to the cause. For the following reasons, the majority opinion incorrectly applies Restatement (Second) of Torts § 483,[1] in that the "ef-

---

1.  § 483.  Defense to Violation of Statute.

The plaintiff's contributory negligence bars his

fect" of SDCL 60–12–3 does not place "the entire responsibility" and the burden of strict liability upon this employer/farmer.

The majority opinion correctly concludes that the F.L.S.A. does not pre-empt SDCL 60–12–3. However, unlike the F.L.S.A., SDCL 60–12–3 does not define what constitutes an "occupation dangerous to life, health, or morals." Therefore, the determination that operating a tractor of over 20 PTO horsepower is not "oppressive child labor" (a dangerous occupation) once the minor completes a training program is not pre-emptive of South Dakota law. Such a determination does, however, indicate that a properly certified minor, such as Tyler, is removed from the class of persons designed to be protected by SDCL 60–12–3.

The majority's holding is also contrary to the legislative intent of SDCL 32–12–12.[2] This statute not only recognizes the necessity of the operation of farm tractors and machinery by South Dakota minors (14–16 years of age), but authorizes such use and operation. This clearly implies that the South Dakota Legislature never intended "to place the entire responsibility ... upon the [farmer] defendant."[3]

Finally, the trial court and the majority read and apply SDCL 60–12–3 in such a strained manner as to repeal by implication SDCL 32–12–12. The language of both statutes is clear and unambiguous, and therefore:

> [I]t is the function of the court to give them effect and not to amend the statute to avoid or produce a particular result.... The Court's only function then is to declare the meaning of the statute as clearly expressed.

*Parsons v. South Dakota Dept. of Soc. Serv.,* 314 N.W.2d 863, 865 (S.D.1982) (quoting *Matter of Sales Tax Refund Applications,* 298 N.W.2d 799, 802 (S.D. 1980)).

> [R]epeals by implication are not favored and should be found only where there is a manifest and total repugnancy between the statutes and where both acts cannot be reconciled through a reasonable construction.

*Parsons,* 314 N.W.2d at 865; *see also, Refund Applications,* 298 N.W.2d at 802; *State, Dept. of Public Safety v. Cronin,* 250 N.W.2d 690, 694 (S.D.1977). There is no "repugnancy between the statutes." Both statutes clearly express legislative intent to regulate and protect certain classes of people. However, SDCL 60–12–3 does not define operation of a tractor as a dangerous occupation and to do so as a matter of law, improperly precludes contributory negligence as a defense and impliedly repeals the express provisions of SDCL 32–12–12.

Although the trial court permitted the jury to determine whether Tyler's employment was a proximate cause of his death, it prevented the jury from receiving evidence concerning the real cause of the death by excluding evidence on contributory negligence. This ruling foreclosed all such evidence, including negligent, reckless or intentional conduct. SDCL 60–12–3 was never intended to have that effect or to tie the hands of the jury. The jury could have properly decided this case if they had been instructed in accordance with the South

---

recovery for the negligence of the defendant consisting of the violation of a statute, *unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant.* (emphasis added).

**2.** SDCL 32–12–12 provides in part:

A restricted minor's permit may be issued, upon application and payment of the proper fee as provided for in § 32–12–16, and passage of all driver's license examination tests, to any minor between the ages of fourteen and sixteen years.... The restrictions as to time of operation and operation under the direction of a parent or legal guardian do not

apply to the holder of a valid restricted minor's permit operating a self-propelled agricultural machine which is not subject to registration under chapter 32–5.

**3.** The concerns raised by Chief Justice Miller's writing would be resolved by the appropriate pattern jury instruction on the negligence of a minor because the primary focus is on the "age, maturity, experience, and capacity" of a reasonably prudent minor in like circumstances. *See,* S.D.Civil Pattern Jury Instruction, 10–05. Therefore, his use of the example of a 5–year–old merits no reply.

Dakota Pattern Jury Instruction 10–05, which provides:

As applied to a minor, ordinary care or skill means that degree of care or skill which would fairly be anticipated in like circumstances from a reasonably prudent minor of the same age, maturity, experience, and capacity.

This instruction, along with standard companion instructions, would permit the jury to decide whether the real cause of injury was employment or conduct. The majority appears to have no faith in the jury system. In this respect, it is interesting to note that the two examples used by the majority involve cleaning augers and disconnecting machinery without shutting off the power—substantially different than the situation here—driving a tractor on a highway.

In this case, Tyler was trained in safely operating farm equipment at the request of his employer and with the consent of his parents. He was familiar with the model 1066 tractor—his own father taught him how to operate one. Tyler was sufficiently competent to comprehend the risks involved. Under the specific facts of this case, Tyler was trained and competent to operate a tractor on the highway and was not within the class of persons designed to be protected by SDCL 60–12–3. Clearly, a jury question is presented. Therefore, the majority has incorrectly applied § 483 because the effect of the statute was *not* to "place the entire responsibility *for such harm as has occurred* upon the defendant." (emphasis added). Contributory negligence should have been allowed as a defense.

Evidence indicated the accident was not caused by mechanical problems: the tractor gradually drifted off the roadway; there were no zigzags in the tire tracks; Tyler informed the mechanic on the morning of the accident, that there were no problems with the tractor. The jury should have been instructed regarding the defense of contributory negligence on the part of Tyler, taking into consideration his age, maturity, experience and capacity. Therefore, we should hold, under these facts, that contributory negligence is a defense

where the minor has by training removed himself from the class of people intended to be protected by SDCL 60–12–3, is authorized by law to operate farm machinery, and understands the dangers incident to his employment. We cannot determine from this evidence whether this death was caused by negligence, recklessness or even intentional actions. Therefore, the question should be decided by the jury on proper instructions.

I also dissent on Issue III for the reason that the contributory negligence or consent of the parents to Tyler's employment may constitute a defense to a cause of action under SDCL 60–12–3.

Under wrongful death statutes, the majority rule is that recovery is barred if the survivor himself was guilty of contributory negligence which contributed to the death of the decedent. Annot., Contributory Negligence of Beneficiary as Affecting Action under Death or Survival Statute, 2 A.L.R.2d 785, 788 (1948); *see also, Nichols v. United States Fidelity & Guaranty Co.*, 13 Wis.2d 491, 109 N.W.2d 131 (1961); *Hondl v. Chicago Great Western Railway Company*, 249 Minn. 306, 82 N.W.2d 245 (1957); *Burkstrand v. Rasmussen*, 77 N.D. 716, 45 N.W.2d 485 (1950). Further, courts have held where a parent consents to a child's employment in violation of child labor statute, that parent may be barred from recovering for the wrongful death of the child, even though the wrongful death proximately results from the employment and disobedience of the statute. *See, Totten v. Parker*, 428 S.W.2d 231, 237 (Ky. 1968); *Wieck v. Blessin*, 165 Neb. 282, 85 N.W.2d 628 (1957); *Lucas E. Moore Stave Co. of Georgia v. Overbee's Adm'r.*, 262 S.W.2d 828, 829–30 (Ky.1953); *Reber v. Hanson*, 260 Wis. 632, 51 N.W.2d 505 (1952); *Besonen*, 220 N.W. at 303; *Swope v. Keystone Coal & Coke Co.*, 78 W.Va. 517, 89 S.E. 284, 285 (1916); 22A Am.Jur. 2d, Death § 209 (1988); Annot., 2 A.L.R.2d 785. *See also, Wheat's Adm'r. v. Gray*, 309 Ky. 593, 218 S.W.2d 400 (1949); 7 A.L.R.2d 1336 (1949).

Here, both Tyler's parents were aware of Tyler's employment. They were aware

that Tyler obtained a certificate permitting him to operate powerful tractors without violating F.L.S.A., and that his duties would include operating Christians International Model 1066 tractor. Even if the steering on Christians' tractor was loose, Mr. Strain testified that he was aware of that fact. No evidence was presented that the Strains ever objected to Tyler's employment under these conditions. Therefore, the jury should have been instructed that the consent of Tyler's parents could constitute contributory negligence and could bar their recovery under South Dakota's wrongful death statute. SDCL 60–12–3; SDCL 21–5–1; *see also, Tufty v. Sioux Transit Co.,* 70 S.D. 352, 17 N.W.2d 700 (1945).

I believe these issues of contributory negligence are for the fact finder or the jury, based on proper instructions. The denial of proper jury instructions on contributory negligence is tantamount to denial of a jury trial to Christians on the real issues in the case contrary to the South Dakota Constitution. S.D.Const. art. VI, § 6.

The effect of the majority holding is contrary to Restatement of Torts § 483, where plaintiff's contributory negligence bars recovery *"unless"* the effect of the statute is to place the *entire* responsibility upon the employer. Our South Dakota statutes do not attempt to place the entire responsibility upon the farmer or employer. The majority opinion places the entire responsibility on the farmer simply because a minor is employed. I would reverse and remand for a fair trial on Issues II and III.

AMUNDSON, Justice (dissenting).

I cannot concur with the majority's position that a violation of SDCL 60–12–3 imposes strict or absolute liability on a farmer/neighbor who employs a child of a neighbor as is the case in this appeal. This statute has been in effect since 1913 (1913 S.D.Sess.L. ch. 240, §§ 2 and 8), and was adopted for the purpose of regulating the employment of women, girls, and children, by fixing the hours and conditions under which they would labor. The statute fur-

ther provided for a penalty for the violation of same. This penalty has always been in the nature of a Class 2 misdemeanor and not that of strict liability, as this holding would establish.

A violation of this statute in the civil forum should only constitute negligence per se. *Lovell v. Oahe Elec. Co-op,* 382 N.W.2d 396 (S.D.1986); *Engel v. Stock,* 88 S.D. 579, 225 N.W.2d 872 (1975). The defendant/neighbor should have been allowed to submit evidence on his claim of contributory negligence for the trial court to consider in a determination on whether or not to submit an instruction on such a defense to the jury. This court has acknowledged that South Dakota is a friendly and neighborly state. *Brusseau v. McBride,* 245 N.W.2d 488 (S.D.1976). This holding will allow such friendly and neighborly conduct on the part of this defendant to blossom into strict liability. I daresay that this was never the intention of the legislature.

In the present case, the defense proposed the contributory negligence instruction set forth in the South Dakota Pattern Jury Instructions (SDPJI 11–01). When considering whether a minor has been negligent, that determination is made by taking into account the degree of care of a *minor,* not a reasonably prudent adult, of like age, intelligence, experience, and capacity in a similar circumstance. *Alley v. Siepman,* 87 S.D. 670, 214 N.W.2d 7 (1974); *Finch v. Christensen,* 84 S.D. 420, 172 N.W.2d 571 (1969). Even though defendant proposed the wrong standard in this case, I would hold that the trial court erred in refusing to allow the defendant the opportunity to offer proof that Tyler failed to comply with the standard of care of a like minor in the operation of this farm tractor.

The legislature exempted parents from the provisions of SDCL 60–12–3. By doing so, a parent can employ, either voluntarily or involuntarily, their child in any dangerous occupation notwithstanding how detrimental such occupation or assigned task is to the life, health or morals of the minor. It seems totally illogical to hold that consent of exempt parents allowing their minor child to work for a neighbor, and oper-

ate the same type of farm tractor that the minor operated for the parents, would not be an appropriate fact for a jury to consider in this particular case. Whether the jury would find such a consent to be contributory negligence to the extent that it would preclude recovery, is a fact question that the jury should have been allowed to consider.